## The City Fire Insurance Company of N. Y. *vs* J. & H. P. Corlies.

A *destruction* of merchandize insured, *by the blowing up with powder of a building in which it was stored,* under the direction of a chief magistrate of a city to prevent the spreading of a conflagration, was HELD to be a peril insured against in a policy against fire, and the insurers adjudged liable for the loss, where it appeared that the fire would have destroyed the building had it not been blown up.

The power thus exercised, though it should be admitted to have been illegally exercised, does not bring the case within the exception exempting the assurers from liability in case of loss arising from *usurped power*. The usurped power provided for in a policy means *a usurpation of the power of government*, and not a mere excess of jurisdiction by a lawful magistrate.

Error from the superior court of the city of New York. The plaintiffs in error were defendants below. The action was on a policy of insurance dated December 9, 1835, by which the company insured the plaintiffs for the period of four months and twenty-two days against loss or damage by fire, to the amount of $3000, on earthen-ware in crates, contained in the brick, slated store No. 75 Pearl street, New York. In the declaration the loss was alleged to have happened, by and through the explosion of large quantities of gun-powder and by fire. On the trial it appeared that in the great fire, on the morning of the 17th of December, 1835, the store No. 75 Pearl street, was blown up with gun-powder, and the goods insured totally destroyed. The explosion was ordered by the mayor of the city, to arrest the progress of a fire then raging to the east of this store. The building next to the store, but not the store itself, was on fire, at the time of the explosion. The buildings all around this store, in every direction, took fire, and were more or less burnt or totally destroyed by the course of the flames; and according to every probability *the fire would have de-*

*stroyed the store in question with its contents, had it not been blown up.* The crates after they fell were consumed by fire. The defendants moved for a nonsuit on the following grounds :

1. The loss alleged did not arise from a cause contemplated by the policy, but was a remote consequence of the fire not necessarily arising from it.

2. The mere fact of bringing gun-powder upon the premises suspended the policy, although deposited without the knowledge of the plaintiff.

3. A loss by explosion of gun-powder cannot be said to by a loss by fire, and those cases in which a recovery can be had where the goods have been destroyed not by fire, but by water or by breakage or the consequences of the fire, are cases where the injury arose in the attempt to *save* the goods insured ; here the goods insured were intentionally *destroyed* to save the property of others.

4. The act was done by the mayor by virtue of his office for the benefit of the citizens at large, and the corporation of the city are liable for his acts even at common law independently of the statute ; if he had no authority, then his own was an usurped power, which is expressly excepted by the policy.

5. This fire was a general *calamity,* and property destroyed to put an end to it, should be a general tax on the citizens, and not a partial one on this insurance company ; and in a doubtful case the policy should be so construed as to lay a general rather than a partial contribution.

The *chief justice,* before whom the case was tried, denied the motion for a nonsuit, and charged the jury that the plaintiffs were entitled to a verdict. The defendants excepted, and the verdict and judgment having passed against them, they now bring error.

*J. W. Gerard,* for plaintiffs in error.

*D. Lord, jr.* for the defendants in error.

*By the Court*, BRONSON, J.   I.   There has, I think, been a loss by the peril insured against, within the meaning of the policy.   In *Grim* v. *The Phœnix Ins. Co.*, 13 Johns. R. 451, no doubt seems to have been entertained, either by the court or counsel, that a loss by the explosion of gunpowder was a loss by fire.   And in *Waters* v. *The Merchants' L. Ins. Co.*, 11 Peters, 213, the point was so adjudged.   The court was of opinion, that fire was the proximate cause of the loss.

II.   According to the terms of the policy, if the building was used for the purpose of *storing* gunpowder, the contract was, for the time, suspended.   And see *Duncan* v. *The Sun Fire Ins. Co.* 6 Wendell, 488.   But placing gunpowder with a lighted match in the building, for the express purpose of producing an explosion, which immediately followed, was a very different thing from what the parties contemplated when they inserted this provision in the contract.   Whether the insurers are liable for this voluntary destruction of the property, is a question yet to be considered.   But I think it quite clear that they have not established the allegation that the building was used for the storing of gunpowder.

III.   The building containing the goods was destroyed by order of the mayor of the city, for the purpose of arresting the progress of a conflagration.   Are the insurers answerable for this voluntary destruction of the property?   This question has been presented in a double form—the one supposing that the mayor acted with, and the other that he acted without, authority.

1.   Let us first assume that the mayor acted illegally.   If the fire had been kindled by an incendiary, it is not denied that the insurers would be answerable.   Why are they not then answerable, if the mayor acted without authority?   The act, though not done for a wicked purpose, was as illegal as though it had been the work of a felon.   The answer attempted is, that although the mayor had no authority, yet as he acted *colore officii*, this is a case of loss happening by means of *usurped power*, which is expressly excepted by the policy.

City Fire Ins. Company v. Corlies.

It is impossible to maintain that a mere excess of jurisdiction by a lawful magistrate, is the exercise of an usurped power within the meaning of this contract. That is not what the insurers had in mind when they made the exception. It was an *usurpation of the power of government*, against which they intended to protect themselves. Such was the interpretation given to the same words in a policy as early as the year 1767. *Drinkwater* v. *The London Assur.* 2 Wils. 363. The property insured was destroyed by a mob, which arose on account of the high price of provisions; and the insurers were held liable, notwithstanding a proviso in the policy that they would not answer for a destruction by "usurped power." Bathurst, J. said, those words, according to the true import thereof and the meaning of the parties, could only mean an invasion of the kingdom by foreign enemies *to give laws and usurp the government*, or an internal armed force *in rebellion, assuming the power of government*, by making laws, and punishing for not obeying those laws. Wilmot, Ch. J. said, the words meant an *invasion* from abroad, or an internal *rebellion, when armies are employed to support it ;* when the laws are dormant and silent, and firing of towns is unavoidable. In *Langdale* v. *Mason*, 2 Marsh. Ins. 791, it was said by Lord Mansfield, that these words were ambiguous, but they had been the subject of judicial determination; that they must mean *rebellion conducted by authority*—determined rebellion, *with generals who could give orders*. And he added " Usurped power takes in rebellion, acting under usurped authority." Whatever doubt there may have been originally about the meaning of the words " usurped power," in a policy, their legal import had been settled long before this contract was made; and we cannot assume that these parties used the words in any other than their legal sense.

2. But the mayor acted under lawful authority; there was no usurpation of any kind. Whether he had the concurrence of two aldermen, as the statute provides, or not, there can be no doubt of his common law power, as the chief magistrate of the city, to destroy buildings, in a case of necessity, to prevent the spreading of a fire. Indeed,

City Fire Ins. Company v. Corlies.

the same thing may be done by any magistrate, or even by a citizen without official authority. *The Mayor of N. Y. v. Lord*, 17 Wendell, 285.

IV. If the mayor acted by lawful authority, it is then said that the property was destroyed for the benefit of the city, and that the corporation (not the insurers) must bear the loss. This case does not fall within the statute charging certain losses on the city, because it does not appear that the mayor had "the consent and concurrence of any two aldermen," 2 R. L. 368, § 81 ; and for the further reason, that the property would have been consumed by fire, if its destruction had not been ordered by the magistrate. *The Mayor of N. Y. v. Lord*, 17 Wendell, 285. It is said that the corporation is liable at the common law for the acts of the mayor: but no authority was cited in support of the position, and I am not prepared to say, that in a case like this, the doctrine can be maintained. The inclination of my mind is strongly the other way.

But suppose the city is liable, I do not see how that fact can affect this contract. If the insurers pay the loss, they may, perhaps, have an action against the corporation of the city, in the name of the assured, to recover back the money. *Mason v. Sainsbury*, 2 Marsh. Ins. 794 ; 3 Doug. 61, *S. C.* But however that may be, the fact that the assured may have a remedy against the city, cannot change or qualify the undertaking of the insurers.

This leads me to notice a little more particularly the extent of the contract. The company agrees to make good unto the assured all such loss or damage to the property as shall happen by fire. Thus far, there is no limit or qualification of the undertaking. If the loss happen *by fire*, unless there was fraud on the part of the assured, which is not pretended in this case, it matters not how the flame was kindled. Whether it be the result of accident or design— whether the torch be applied by the honest magistrate, or the wicked incendiary—whether the purpose was to save a city, as at New York, or a country, as at Moscow—the loss is equally within the terms of the contract. That the insurers intended the general undertaking should extend to every

possible loss by fire, is evident from the fact, that they afterwards proceed to specify particular losses by fire for which they will not be answerable. *Columbia Ins. Co.* v. *Lawrence*, 10 Peters, 507. The exceptions are contained in the sixth condition of the proposals annexed to the policy. It is unnecessary to recite the clause, because it is not pretended that this case comes within any of the exceptions, save that relating to a loss happening by means of "usurped power," and that point has already been considered.

There has then been a loss by fire. The case falls within the general undertaking of the insurers, and is not affected by any of the exceptions which they thought proper to make to the extent of their liability. We cannot add another exception. The insurers are bound by their contract.

Judgment affirmed.