(Decided 30th March, 1880.)

---

THE MERCHANTS AND MINERS' TRANSPORTATION COMPANY OF BALTIMORE *vs.* THE ASSOCIATED FIREMEN'S INSURANCE COMPANY OF BALTIMORE.

*Fire Policies on a vessel and Marine Policies on the Cargo— Who to bear the loss in case of Damage by Fire—Adjustment by General Average of Damage to Cargo—Fire Companies not liable for Assessment on Vessel.*

The appellee issued its policy of insurance to the appellant to indemnify it for loss by fire on its steamer George Appold. On 20th October, 1877, while the steamer was loading at the port of Savannah, a fire was discovered in a cargo of cotton stored in its forehold, and to save the steamer and cargo from destruction the vessel was submerged. The damages to the vessel were estimated

Merch. & Min. Transp. Co. *vs.* Assoc. Firemen's Ins. Co.

at $2500, and to the cargo at $10,500. The steamer was insured by other fire insurance companies besides the appellee. The cargo was insured under marine policies. The damage to the cargo was adjusted by general average at the port of Baltimore, and a proportion of this loss was assessed upon the steamer. The appellant sued the appellee to recover not only the sum found to be the actual loss inflicted on the steamer by the fire, but also the general average assessment upon the vessel, as an immediate consequence of the fire. The appellee and the other fire insurance companies tendered themselves ready to pay the amount of the actual damage to the steamer but denied the appellant's right to recover for the general average loss upon the cargo, as a risk not within the terms of the policy. HELD:

That the appellant was not entitled to recover the general average assessment upon the steamer for loss upon the cargo.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial, the plaintiff offered three prayers, of which it is necessary to set out only the first; which is as follows:

That if the jury find from the evidence that the steamer George Appold, mentioned in the policy of insurance offered in evidence, having on board a cargo shipped under contracts of the term and effect of the bill of lading offered in evidence, took fire in the port of Savannah, on the 20th October, 1877, and that some of said cargo was also on fire; and that said fire occurred without any fault on the part of the plaintiff, or its agents; and if they further find, that said fire, unless arrested, would have totally destroyed said vessel and cargo; and that the master of said vessel, for the purpose of extinguishing said fire, and thereby saving said vessel and cargo from destruction by fire, caused water to be introduced into said vessel in the manner and to the extent mentioned

450 . MARYLAND REPORTS.

Merch. & Min. Transp. Co. *vs.* Assoc. Firemen's Ins. Co.

in the evidence, and by so doing did, in fact, save said vessel from total destruction by fire, and did also save a part of said cargo from damage by fire, and if they should further find, that by means of the said act of the master, damage was done by the water so introduced to said vessel, and to a part of the cargo, and certain losses and expenses thereby necessarily incurred, then such damages, losses and expenses so caused by said act of said master, constituted a general average loss, to the payment of which the owner of said vessel became legally bound to contribute, and said vessel became bound therefor; and if the jury find, that said vessel could not have been saved from destruction by fire, except by the introduction of water into her as aforesaid, and that water was so introduced by the master of said vessel, acting in good faith, and in the exercise of sound judgment and discretion, with the intent to adopt the most effectual means in his power, under the circumstances, for the preservation of said vessel from loss by fire, then the amount which the plaintiff, as owner of said ship, so became liable to contribute and pay on account of said ship, of said general average loss became and is part of the loss of the plaintiff by fire, within the meaning of the policy of insurance offered in evidence.

The defendant offered the following prayer :

Under the pleadings, agreements, admissions and evidence in this case, the plaintiff is only entitled to recover $178.13, the amount tendered by the defendant before the institution of this suit.

The Court (DOBBIN, J.) rejected the plaintiff's prayers, and granted the defendant's prayer. The plaintiff excepted, and the verdict for $178.13, (being the proportion due by the defendant as one of the fire insurance companies which had severally insured the plaintiff in the sum of $5000), and judgment thereon being for the plaintiff, the plaintiff appealed.

It was agreed that the liability of the Manhattan Fire Insurance Company of New York City, and that of the National Fire Insurance Company of Baltimore to the appellant, under their policies of insurance against loss by fire on the Steamer George Appold, should be submitted for determination in this case.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER, ROBINSON and IRVING, J.

*Charles Marshall,* for the appellant.

The policy in this case was upon a vessel " trading from Baltimore to Boston, and elsewhere, as a general freight steamer, while running, or in port or harbor."

It is unnecessary to say that the insurers should be held to have contemplated all perils to which the vessel was exposed by reason of the peril insured against.

A policy on a stock of dry goods covers not only a loss by actual combustion, but it covers also damage by water to the stock, when such damage is caused by trying to extinguish a fire or even to avert one. This is because the law considers that from the very nature of the subject-matter, the parties must have had in contemplation the natural physical consequences resulting to that subject immediately from the peril insured against.

The principle is not denied when the connection between the peril and the damage done is one that can be traced through natural or physical laws. If the operation of *those laws* works the damage, by reason of the necessary effect of the peril upon the subject-matter, it is conceded that such damage is within the policy. But it is denied that the principle applies, when the law that connects the peril with the damage is the *law of man,* and not the law of nature. If fire occur, by the law of nature it consumes the material with which it comes in contact, and by a like law, water must be used to extinguish it, and water

will damage goods on which it is thrown.    All such damage therefore, is the immediate result of the fire, and the underwriter must pay it.

But here is a ship insured, and insured as a freight ship ; insured in port and on a voyage.    Should she take fire, and in putting out the fire, water be used, it is not denied that the *physical* damage done to the *corpus* of the ship. by the water so used must be borne by the insurer.    But. one way to extinguish fire in a ship, and especially in a freight ship, familiar to all who know what ships are, is. to scuttle her, and fill her with water.    Sometimes this course is the only course; and by the eighth condition of the policy, it is made the duty of the insured to do all in his power for the safety and protection of the property insured.    But if she be scuttled voluntarily, having a cargo. on board, she cannot be scuttled without subjecting the. cargo to damage, and the damage thus voluntarily suffered by ship and cargo, for the preservation of both, if successful, gives rise to a liability on the part of each to contribute to pay the loss.

The law which creates this liability is not a natural law, but it is a law of man, as certain and fixed in its. operation as a law of nature.    It will as certainly impose an obligation on the ship, which is a charge upon her, as the water itself by natural law, will injure her paint or machinery on which it is thrown.

The insurer of a ship can no more be heard to say that. he did not know that a ship was liable to such a loss,. arising from the use of water to save her from fire, than he could be heard to say that he was ignorant of the. physical consequences to paint and machinery, of the use of water to extinguish a fire.

The cause of loss is *immediate* in the sense of the law of insurance, whether it be connected with and produce. the loss by operating upon the subject-matter through *natural* or *human law.*

The loss was properly a general average loss. *Nelson vs. Belmont,* 5 *Duer,* 310, 323 ; 2 *Parsons' Mar. Ins.,* 234, *n.* 2 ; *Stewart vs. West India and Pacific S. S. Co.,* 8 *L. R. Q. B.,* 362 and 88; *Arnould Ins.,* 898 ; *Peters vs. Warren Ins. Co.,* 14 *Peters,* 99 ; *Arnould on Insurance,* 904, margin, as to allowance of expenses, salvage, &c. ; *Arnould,* 915, margin, as to employment of extra hands. As to law of place of adjustment of general average loss, see *Arnould,* 933, *margin; Simmonds vs. White,* 2 *B. & C.,* 803.

As to damage, which is regarded as covered by a fire policy other than direct combustion, see *City Fire Insurance Co. vs. Corlies,* 21 *Wendell,* 367 ; *Wells vs. Boston Insurance Co.,* 6 *Pick.,* 182; *Geisek vs. Crescent Mutual Ins. Co.,* 19 *La. An.,* 297 ; *Scripture vs. Lowell Manf. F. Ins. Co.,* 10 *Cush.,* 356; *Case vs. Hartford F. Ins. Co.,* 13 *Ill.,* 676, 680 ; *Minnick vs. Holmes,* 25 *Pa.,* 366.

As to whether this loss is the immediate result of peril insured against, see *Peters vs. Warren Ins. Co.,* 14 *Peters,* 99 ; *Gen. Mar. Ins. Co. vs. Sherwood,* 14 *Howard,* 351; *Dent vs. Smith,* 4 *L. R. Q. B.,* 414 ; *Flanders on Insurance,* 464, 465 ; *Burges vs. Wickham,* 3 *B. & S.,* 669 ; 1 *Parsons' Marine Ins.,* 554, 555, *n.,* where the author questions the decision of Judge STORY in *Peters vs. Warren Insurance Co.,* 14 *Peters,* on the ground that the loss there allowed, as one within the policy, was a loss growing out of the *particular local law* applicable to the collision, and not out of the operation of the *general maritime* law (as in this case.) See also, 6 *Pick.,* 182 ; 13 *Ill.,* 676, 680.

*George Hawkins Williams* and *John H. Thomas,* for the appellee.

1. The doctrine of marine average is never applied to a fire policy.

When Courts find that the loss has arisen from an enumerated peril, they do not stop to inquire whether it has arisen from immediate damage to the thing insured, or

from a liability of that thing to contribute to a loss suffered by something else.    2 *Parsons' Marine Insurance,* 202; *Peters vs. The Warren Insurance Co.,* 14 *Peters,* 107, 108; *General Insurance Company vs. Sherwood,* 14 *How.,* 364–5–6 *and* 7; 1 *Parsons on Marine Insurance,* 552.

The appellee insured the steamer George Appold " against all such loss or damage as shall happen by fire to the property above specified." They did not insure the cargo at all.    The insurance of the vessel—a thing not very liable to burn; not at all liable to be damaged by water used to extinguish a fire—does not imply a willingness to insure, or be responsible in general average for cotton, which is liable to spontaneous combustion.    *General Insurance Company vs. Sherwood,* 14 *How.,* 351–62.

2. The doctrine of general average is only applied in adjusting liabilities consequent upon a *marine* peril; in this case there was an ordinary fire at a wharf, and not a marine peril in any sense.    *Star of Hope,* 9 *Wallace,* (*U. S.*) 228; *Fowler vs. Rathbones,* 12 *Wallace, U. S.,* 114.

To entitle a plaintiff to claim contribution in general average, the thing for which the claim is made must have been voluntarily sacrificed to save that against which it is made.    Here the thing destroyed or damaged was itself the culprit article.    From its *vice propre* it became the source of destruction to ship and cargo.    To save it from itself, and to prevent its destroying everything around it, *it* had to be submerged; and the effort is to compensate the owner for preventing this commodity from destroying itself; and because, in destroying itself, it would have destroyed something else, therefore, the something else must pay for being so put in peril and damaged—must pay, not for being saved, but for being partially destroyed; and payment must be made to the destroyer, or rather, in this case, to the plaintiff, who has compensated the owner of the culprit article for the limited damage inflicted by

it. *Slater vs. Hayward Rubber Co.*, 26 *Conn.*, 128–36; *Crockett vs. Dodge*, 3 *Fairfield*, 190; *Johnson vs. Chapman*, 19 *C. B. N. S.*, 581, (115 *E. C. L. R.*); 2 *Phillips on Insurance*, 1305; *Welch vs. Robinson*, 4 *Whart.*, 360; *Stewart vs. West India Co.*, 8 *L. R. Q. B.*, 88, 362; *Lowndes on Average*, 49, &c.

The peril to be averted by the voluntary sacrifice must be a peril *ab extra;* not a peril from the *vice propre* of anything within the ship or inherent in the cargo. *Slater vs. Hayward Co.*, 26 *Conn.*, 128, 136; *Johnson vs. Chapman*, 19 *C. B. N. S.*, 581, (115 *E. C. L. R.*)

*William C. Schley*, for the Manhattan Fire Insurance Co.

The *gravamen* of the appellant's claim is, that it should be reimbursed by the companies to the extent to which it has contributed as owner of the vessel upon a general average adjustment, to the loss sustained by the cargo, upon the ground that this loss was an immediate consequence of the fire, and therefore, within the terms of the fire policies. This claim is resisted by the companies as foreign to the nature and terms of a fire policy, and never contemplated between the parties at the time of the formation of the contract of insurance.

1. This is strictly a fire policy—just as much as though it were upon a building, and not upon a vessel. No "law of the land" can change the express written contract into which the insurer and the insured have mutually entered. There is no abandonment nor salvage in a fire policy, and "general average" is unknown. This limited liability under a fire policy, the object of which is to indemnify the assured against a *certain specified injury to a certain specified thing*, as distinguished from a marine policy, has received judicial recognition. *Liscom vs. Boston, &c.*, 9 *Metcalf*, 211; *Bowly vs. National Ins. Co.*, 11 *Metcalf*, 195; *Jolly vs. Balto. Eq. Ins. Co.*, 1 *H. & G.*, 295.

2. The steamer was tied to her pier at Savannah, not exposed to the ordinary *perils of the sea*, and a fire origi-

Merch. & Min. Transp. Co. *vs.* Assoc. Firemen's Ins. Co.

nated in the cargo through spontaneous combustion. The cargo was insured in marine companies, which were insurers against fire and its consequences. The vessel takes fire from the cargo, and to extinguish the fire consuming both the cargo and the vessel, the latter is sunk, and the cargo flooded and saved from total destruction. There was no *voluntary sacrifice* on the part of the cargo; which would inevitably have been totally lost if left in the hold in its ignited condition. It was the bounden duty of the owners of the cargo to do everything possible to prevent its doing further damage. In its ignited condition in the hold it was valueless, and an element of mischief threatening the ship with destruction. The loss upon the vessel and cargo should be borne by the underwriters respectively insuring them. It was "save who can" *tanquam ex incendio. Slater vs. Hayward,* 26 *Conn.,* 136; *Meech vs. Robinson,* 4 *Whart.,* 363; *Crockett vs. Dodge,* 12 *Maine,* 190; *Columbian Ins. Co. vs. Ashby,* 13 *Peters,* 343.

In addition to the above, it appeared from the evidence, that the fire originated in the cargo itself through some inherent quality, which of itself would prevent its being a proper case for such a demand as is now set up. *Lee vs. Grinnell,* 5 *Duer,* 427; *Boyd vs. Dubois,* 3 *Campbell,* 133; 1 *Parsons' Marine Ins.,* 558; *Lowndes' General Law of General Average—passim.*

3. But whether this would be a valid claim against a marine company, or whether it is a proper case for the exercise of the doctrine of general average as between the *cargo and the vessel,* is a question with which this company has no concern, because its policy is a fire policy; and not a case has been, or can be cited, in which a fire insurance company has been held liable upon a general average adjustment such as made in this case.

In *Bates' Digest of Fire Insurance Decisions,* under the head of *General Average, p.* 322, but one case is cited, to

wit: *Welles vs. Boston Insurance Company*, 6 *Pick.*, 182, and which is referred to by the appellant. The decision in that case turned upon an "implied promise" on the part of the insurance company, and cannot be regarded as an authority in favor of the appellant.

The plaintiff offered in evidence at the trial below, a bill of lading in the form under which the cargo of the steamer had been taken on board, for the purpose of showing that *loss by fire* was one of the perils excepted by the terms of the shipment. This exception is usual in modern bills of lading, and while it has no direct bearing upon the case, yet any effect it may have is clearly favorable to the companies. The owner of the vessel was not responsible for the injury occasioned to the cargo by fire, the latter being fully insured in marine companies against loss by fire, as well as against the other risks covered by a policy of that character. Having no valid claim against the *owner of the vessel*, it is difficult to imagine upon what theory the vessel's insurers can be subjected to an increased liability.

4. A provision in the policy of this company stipulates, that in the event of any loss or damage, the said company shall have the right (if it so elect,) to enter upon and rebuild or repair the premises, or replace the property destroyed or damaged with other of the same kind and equal goodness, within reasonable time after the notice of the loss. Where the payment of the loss in this particular way is stipulated for, the insured must be permitted to so pay it, and if the insured refused to receive the indemnity in the manner provided, upon the company electing in apt time to pursue that mode of payment, the insured can recover nothing upon his policy. A contract of insurance to be complete must be definite and certain. The option of the company to rebuild or repair, must be respected and allowed, or there is no contract, and the operation of that contract is confined to "the thing insured," which is alone in contemplation.

5. But this controversy was, before the institution of the suit, submitted, by agreement between the appellant and fire companies, to assessors, whose award was to be final and conclusive. That award has been made as covering *all loss or damage by fire.* It was binding upon the companies, and estoppels are mutual. The contention on the part of the appellant is, that the injury to the cargo, was an immediate consequence of the fire. If it were such, which we deny, then it is covered by the award, which is final. If it was not an immediate consequence of the fire, then clearly the appellant has no claim whatever.

*Frank P. Clark,* for the National Fire Insurance Company.

ROBINSON, J., delivered the opinion of the Court.

This suit is brought by the appellant, owner of the steamer " George Appold," on a *fire policy* issued by the appellee, insuring said steamer against loss by fire.

It appears that on the 20th October, 1877, while loading at the port of Savannah, a fire was discovered among a cargo of cotton stowed in the forehold of the steamer, and in order to save both the steamer and cargo from destruction, it was found necessary to submerge the vessel.

The damages direct and indirect to the *steamer itself,* were estimated at $2500, and the damages *to the cargo* at $10,500.

The adjuster to whom the matter was referred decided, that the *damages to the cargo* were according to the usage and laws of the port of Baltimore, subject to the law of *general average;* and the appellant as owner of the steamer was obliged to contribute to the cargo the sum of $5231.29.

The steamer was insured by the appellee and other *fire companies* to the amount of $80,000; and the cargo was insured under *marine* policies.

The fire companies tender themselves ready to pay $2500, the amount of damage sustained by the steamer,

but the appellant claims that in addition to this sum, he is entitled to recover the amount paid by him under the law of general average to the cargo. And this is the question, and the sole question at issue between the parties.

Were this a question to be determined purely upon equitable principles, there might be some ground to support the appellant's contention.

The steamer was fully insured by the fire companies, and in the event of its destruction by fire, they would have been liable for the entire loss sustained by the appellant. In that event, instead of the sum of $5231.29 now claimed by the appellant, they would have been obliged to pay the entire amount covered by their respective policies.

If the steamer was saved from destruction by being submerged, and the appellant as owner was in consequence thereof, obliged to pay five thousand dollars for damages to the *cargo*, it would seem but fair and equitable that he should be reimbursed a loss thus incurred for the benefit and protection of the insurers.

The liability however of the insurer is one arising upon *contract*, and must be determined by the terms of the policy upon which this suit is brought. It is hardly necessary to say, that a policy of insurance like any other contract, must be construed according to the evident intention of the parties, to be gathered from the language used taken in connection with the subject-matter to which it refers.

The rights and obligations of the parties to this suit must therefore be determined by the contract as made between them; and we have no power to add new conditions or to extend the risk beyond what is fairly within the terms of the policy itself. Now what are the terms of this policy? Looking to the face of it, we find the thing insured is a *steamer*, and the *peril* insured against is *loss by fire*. No other risk was assumed by the insurer, and indemnity

against loss from this peril and this alone was the consideration for which the premium was paid by the insured. Here then is a contract in regard to a *specific subject* and made for a *specific purpose,* and by it the correla tive rights and obligations of the parties must be determined.

It is not contended that the appellee has in express terms agreed to reimburse the appellant for losses which as owner he might be obliged to contribute to the cargo, but the argument is, that the insurer is liable for all damages resulting directly from the peril insured against, and that actual combustion is not always the *test* by which such damages are to be ascertained. This in a certain sense is true.

The insurer of a stock of goods may be liable for damages caused by water, although the water was used to extinguish a fire upon the house in which such goods are stored. And upon the same principle it has been held, that the insurer of a house is liable for its destruction, when such destruction was absolutely necessary to arrest the progress of a fire in a city. *City Fire Ins. Co. vs. Corlies,* 21 *Wendell,* 367; *Wetherall vs. Marine Ins. Co.,* 49 *Me.,* 200; *Geisek vs. Crescent Mutual Ins. Co.,* 19 *La. An.,* 297; *Hillier vs. Allegheny Co. Mut. Ins. Co.,* 3 *Penn.,* 470; *Thompson vs. Montreal Ins. Co.,* 6 *U. C., Q. B.,* 319.

In these and other like cases, the law presumes, that the parties from the very nature of things, must have contemplated the natural aad physical consequences resulting from the peril insured against. So, in this case, the appellee is not only liable for the damages to the ship from actual combustion, but also for damages to the vessel resulting directly from the means used to extinguish the fire. But the liability of the insurer arising in cases where the peril insured against has been the proximate cause of the loss, has never been held to cover damages to other property not insured by the policy.

If, then, the appellant is entitled to recover in this suit, it must be upon the ground, that the *law of general average,* by which he was obliged to contribute to the loss sustained by the *cargo,* constitutes and forms a part of the risk assumed by the appellee. Fire policies, it is well known, have been in existence for centuries, and it is but fair to presume that cases like the present, where the vessel has been insured by such policies, and the cargo insured under *marine policies,* must have frequently occurred; and yet no case has been found, in which it has been held, that the fire policy must contribute to the loss sustained by the cargo. Not only this, but the proof in the record shows, that the usage and laws recognized by mercantile men, and by which such policies are construed, are all against this contention. In determining for the first time a question arising upon insurance, such usage and laws are entitled to weight, not only because they are approved and sanctioned by practical and sagacious men, in regard to a subject-matter, in which they are alike interested, but also because the parties must be presumed to have contracted with reference to them. In fact it has been said, that the whole law of insurance has done little else, than to adopt such laws and usages, and to give to them the force of authority.

In the absence then of any authority to support the appellant's contention, let us see whether it can be supported on principle. The whole scope and object and purposes of a *fire policy,* are different from those of a *marine policy.*

By the former the insurer agrees to indemnify against loss by fire. That is the *only peril* for the loss by which he agrees to become responsible; and we have no right to enlarge the contract, or to extend the risk by implication. By a marine policy, the underwriter engages to pay not only the loss or damage to the thing insured, but also to reimburse the owner all sums paid by him under the laws of general average.

General average, is a contribution by all the parties in a *sea adventure*, to a loss suffered for the common benefit of all. In such cases, where any sacrifice is deliberately and voluntarily made, or any expense is fairly and *bona fide* incurred, to prevent total loss, or some greater disaster, it is but just and right, that the sacrifice or expense should be borne relatively by the owner of the ship, freight and cargo, to the end, that the loss may fall equally upon all the parties in interest. *Birkley vs. Presgrave,* 1 *East,* 228; *Hallett vs. Wigram,* 9 *C. B.,* 580; *Fletcher vs. Alexander,* 37 *L. J.,* (*C. P.,*) 196, *L. R.,* 3 *C. P.,* 380.

For risks thus assumed, and which may be said to be co-extensive with the perils of the sea—embracing general average, salvage, and abandonment, the insured pays a premium more than five times greater than the premium against loss by fire alone.

If the appellant desired protection against the risk of general average, or against other perils of the sea, he should have insured under a marine policy. If he preferred to insure at a lower rate of premium, and to take upon himself all risks, other than loss by fire, he has no reason to complain, because the insurer refuses to reimburse him for a loss not covered by the policy; and which by the well settled law of insurance constituted no part of the contract between the parties.

In the many cases relied on by the counsel for the appellant, the questions considered and decided arose on *marine policies,* under which the rights and obligations of the parties are altogether different from those belonging and incident to a *fire policy.*

The policy sued on in this case limits the liability of the appellee to losses to the *steamer itself by fire,* and upon such a policy, the appellant is not entitled either upon principle or upon authority to recover the amount which under the law of general average, he was obliged as owner

of the vessel to contribute to the cargo, even though the damages to the cargo were occasioned by the means used to extinguish the fire in the vessel.

The statement of facts shows, that the damages *direct* and *indirect* to the steamer were $2500, and this sum the appellee tenders itself ready to pay. There was no error therefore in refusing to grant the appellant's prayers, and the judgment below must be affirmed.

*Judgment affirmed.*

(Decided 30th March, 1880.)