SINGLETON *et al. v.* PHŒNIX INS. CO.

*(Supreme Court, General Term, Third Department.* July 7, 1890.)

**1. INSURANCE—ACTION ON POLICY—CAUSE OF LOSS.**

 A canal-boat was insured against fire, and the usual peril of inland waters, under a policy permitting the carrying of lime in barrels. In the course of the voyage fire was discovered, and, barrels of lime on deck being removed, it was found that the heat was so intense that the barrels in the hold could not be unloaded. The boat was then scuttled. *Held,* that the fire was the direct cause of the loss, and that it was for the jury to say whether the scuttling was necessary or proper under the evidence.

**2. SAME—EXCEPTIONS.**

 The policy excepted perils consequent upon "want of ordinary care and skill in loading the cargo," and "rottenness, inherent defects, and other unseaworthiness, from gangways, and openings through the deck or sides improperly secured." The evidence as to the manner of loading the cargo, and the condition of the vessel, was conflicting. *Held,* that whether the loss was traceable to the exceptions should have been submitted to the jury.

Appeal from circuit court, Warren county.

Action by James Singleton and Jerry Singleton against the Phœnix Insurance Company. Plaintiffs appeal.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*S & L. M. Brown,* for appellants. *Sheldon & Ashley,* for respondent.

MAYHAM, J. This is an appeal from a judgment entered upon a nonsuit granted at the Warren circuit. The action was upon a policy of insurance issued by the defendant, upon the canal-boat called the "Mary V. Keenan," and her tackle and apparel, for $1,200, with the privilege of carrying lime in barrels. The insurance was against and touching the adventures and perils of the inland lakes, rivers, canals, and fires that should come to the damage of said vessel, or any part thereof, excepting perils, losses, etc., consequent upon, arising from, or caused by, want of ordinary care and skill in loading and stowing the cargo of said vessel, from rottenness, inherent defects, and other unseaworthiness, from gangways and openings through the deck or sides improperly secured and protected, etc. While this policy was in force the boat was loaded at Green island from a train of railroad cars, with lime in barrels, both in the hold and deck, and was started in tow for New York, and, while halting temporarily at Albany, she was discovered to be on fire, smoke issuing from the hold in different places. The cargo on deck was immediately removed, and when that was done the deck appeared to have been too hot to enable parties to proceed further with unloading, and she was towed a safe distance down the river, and then scuttled by the captain and sunk. The next day after the sinking of the boat, the plaintiff notified an agent of the company at Glens Falls, who visited the place of the loss, and from that time forward up to the time of the action considerable correspondence between the parties occurred.

Two questions are mainly urged as reasons why the judgment should be reversed, and a new trial granted: (1) That the evidence was sufficient to warrant a finding that the loss was caused by one of the perils insured against, and that the defendant had no valid defense to the claim; (2) that the evidence was sufficient to authorize a finding that the defendant had waived all defense to the plaintiff's claim, and was estopped from denying liability. The learned judge at the trial disposed of the case upon the first proposition, as matter of law, in effect holding that the loss was not occasioned by any of the matters against which the defendant's policy insured, but, on the contrary, was occasioned by reason of causes excepted in the policy, and for which the defendant would not be liable. This action being upon the policy, before the plaintiff could recover he must show that the loss fell within some of the causes embraced within the terms of the risks assumed

by the defendant. The burden is upon the plaintiffs to show loss and damages against which they were protected by the policy, and as to which the defendant assumed the risks. *Berwind* v. *Insurance Co.*, 114 N. Y. 231, 21 N. E. Rep. 151. The defendant, by this contract of insurance, used the following words as a limit of the extent of the risk: "Touching the adventures and perils which the said Phœnix Insurance Company is content to bear and take upon itself by this policy, they are of the inland lakes, rivers, canals, and fires that shall come to the damage of said vessel or any part thereof." It cannot be contended, and I think it is not urged, that under the proof in this case this loss falls within any of the casualties insured against except fire. There is no proof that any of the perils of the sea embraced within the terms of the policy produced the injury complained of. There is no evidence that it was the result of extraordinary "winds, waves, lightning, tempest, rock, or sand." *Pitcher* v. *Hennessey,* 48 N. Y. 419. Ordinarily in marine insurance the insurer undertakes only to indemnify against extraordinary and unforeseen peril, and not against the ordinary perils to which every ship or vessel is exposed in the usual course of a voyage. Pars. Mar. Ins. 518. But this policy was a fire as well as a marine insurance, and it is insisted that the loss here, or at least the proximate cause of the loss in this case, is within that provision of the policy insuring against fire. The testimony clearly establishes that the boat was on fire at the time she was scuttled by the captain; that the heat was so intense that the cargo in the hold could not be removed; and that any attempt on the part of the captain or crew to extinguish the fire by pouring on water would aggravate instead of mitigate the danger, as the action of the water on the unslacked lime would increase the heat, and accelerate the combustion. These facts were fully established by the evidence, although, at the time the boat was scuttled, no fire was visible; but it is not denied that the boat, at the time she was scuttled, was on fire in the hold, and the fire had at that time progressed so far that the jury might, within the evidence, in view of the peculiar character of the cargo, have found that the only method of extinguishing it was by sinking the vessel. It would seem, therefore, that the fire was the direct cause of the loss, and the law seems well settled that in cases of insurance in the absence of fraud, the law looks to the proximate cause only of the loss, in determining whether it was caused by a peril insured against. In *Insurance Co.* v. *Corlies*, 21 Wend. 367, it was held that the destruction of merchandise insured by blowing up with powder of the building in which it was stored to prevent the further spread of the conflagration was a peril insured against in a policy against fire. In *Gates* v. *Insurance Co.*, 5 N. Y. 478, the court says: "The rule is well settled, not only in England, but in general American insurance law, that in the absence of fraud the proximate cause of loss only is to be looked to, and the same rule prevails in marine insurance." It follows that the loss in this case was within the terms of the policy insured against; or at least, under the evidence, the jury might have so found, if from it they had reached a conclusion that the boat was on fire at the time she was scuttled, and the scuttling was necessary or proper to preserve her from total loss or destruction by fire. But it is insisted by the defendant there was no loss by fire, and, as matter of law, the plaintiff could not recover under the insurance against damage by fire in the policy, and the case of *Briggs* v. *Insurance Co.* is cited as an authority to support that contention. In that case the damage was caused by an explosion occasioned by gas coming in contact with a lamp, and the question was whether the defendants were liable for damage caused by the explosion; the policy expressly providing that the company should not be liable for an explosion of any kind, and the court held that the plaintiff could not recover for damage occasioned by the explosion. 53 N. Y. 449. The principle in that case is quite unlike this. The court distinguishes between a case when the explosion is the principal, and the fire

the incident, and one where the fire is the principal, and the explosion is the incident. Nor is the case of *Babcock* v. *Insurance Co.* an authority in point in this case. That was a case in which the policy provided for a loss from fire by lightning. The building was rent and torn, but not fired by lightning, and the court held the plaintiff could not recover on the policy. 6 Barb. 637. We think the proof in this case justified a submission of the question of the existence and extent of the fire to the jury, unless, by the undisputed facts, the case was brought within some one of the causes excepted by the terms of the policy.

The exceptions were loss from incompetency of the master, or insufficiency of the crew, from want of ordinary care and skill in loading and stowing cargo of said vessel, from rottenness or inherent defects and other unseaworthiness, from theft, barratry, and robbery, from the bursting or explosion of a boiler, collapsing of flues, or breaking of machinery, unless occasioned by unavoidable external cause, or fire ensuing therefrom. These are the only excepted causes of injury to the vessel which could possibly have any relevancy to this case. The first is as to the incompetency of the master, or insufficiency of the crew. No point seems to have been made upon the trial of deficiency in either of these respects; but, if there were objections upon these points, the evidence was sufficient to present a question of fact to be submitted to the jury. The evidence showed how long the master had acted in that capacity, and how long he had been engaged in boating on the canal, also what the usual and proper crew was for this kind of service, and the number of hands employed; and we think that evidence was sufficient to raise a question of fact for the jury, and the court could not properly pass upon them as questions of law, without first finding the fact. The second exception in the policy was for rottenness, inherent defects, and other unseaworthiness. Was this loss so directly traceable to defects coming within this exception as to authorize the trial judge to treat it as a question of law arising upon an undisputed state of facts, or was the evidence upon this point of such a character as to raise questions of fact to be passed upon by the jury? On the part of the respondent, it is insisted that the fact of the burning of the vessel by the slacking of lime furnishes incontrovertible evidence of her leaky and unseaworthy condition, and that therefore the cause of the loss was defects against which there was no insurance, and as to which there was an express exception in the policy; while on the part of the appellants, it is claimed that the evidence is full and complete that this was a very stiff boat, which had been used about seven years, was thoroughly repaired and well, and always kept so, and was perfectly tight, and seaworthy at the time of the loss. The contention on this point on either side seems to have the support of some evidence, upon which a disputed question of fact is raised, proper for the consideration of the jury. There is no pretense that the third exception in the policy existed in this case, that of "theft, barratry, or robbery." Was the loss indisputably traceable to this exception, "from gangways and openings through the decks or sides being improperly secured or protected?" We think, under the evidence, that question should have been answered by the verdict of the jury, and not disposed of as a question of law by the court. There is some evidence of the manner in which the hatchways were closed and covered by canvas, and with that evidence in the case which bore upon this question, it should have been submitted to the jury. The same may be said of the manner of loading, and the care and skill in loading and stowing the cargo in the vessel. There was some evidence as to the manner in which it was done, that the lime in the barrels in the hold rested upon a floor six inches from the bottom of the boat, and that the barrels were not exposed to water while being loaded, but were rolled on skids from the railroad car to the deck of the boat. It was quite true, as the learned judge remarked, that the permission to carry lime was accompanied with the implied condition

that it "should be properly stowed;" but, whether it was so stowed or not, we think, was a proper question of fact for the jury, and should have been submitted to them. One of the perils insured against was loss by fire, and the insurers took upon themselves the increased hazard of carrying lime in the boat, and the only qualification in the policy was "want of ordinary care and skill in loading and stowing the cargo in said vessel." Whether that care and skill were exercised in this case was clearly a question to be determined by the jury, under the evidence in the case, and upon the motion for a nonsuit upon the whole evidence the plaintiffs are entitled to all presumptions and reasonable inferences that the jury would have been authorized to draw in their favor from the evidence. *Rehberg* v. *Mayor, etc.*, 91 N. Y. 141. The allegations of the complaint were sufficient to state a cause of action. The law implies as a part of the contract of marine insurance a warranty of seaworthiness, and the complaint alleged that the plaintiffs had duly performed said contract of insurance in all things on their part. *Van Wickle* v. *Insurance Co.*, 97 N.Y. 350; *Berwind* v. *Insurance Co.*, 114 N.Y. 231, 21 N. E. Rep. 151; Code Civil Proc. § 533. We are of the opinion that there were questions of fact raised by the evidence in this case that should have been submitted to the jury, and that the learned justice erred in refusing to submit them, and in nonsuiting the plaintiffs, and that for that reason the judgment of nonsuit should be reversed, and a new trial granted.

This view of the case renders it unnecessary for us to examine the other points raised and litigated on the trial, as to whether the defendant, by its conduct in reference to the insured property after the loss, is estopped from denying the liability. The judgment is reversed, and a new trial ordered, with costs to abide the event. All concur.