JAMES SINGLETON et al., Respondents, *v.* THE PHENIX INSUR-
ANCE COMPANY, Appellant.

Defendant insured plaintiff's canal boat for one year from August 2, 1886,
against perils of "rivers, canals and fires," excepting losses "arising
from want of ordinary care and skill in loading and stowing cargo,
* * * inherent defects and other unseaworthiness," and from "gang-
ways * * * being improperly secured and protected." The policy
authorized the carrying of lime in barrels. In May, 1887, the boat was
loaded with quick-lime in barrels at a point on the Hudson river.
Between three and four hours after the loading was completed, the hold
of the boat was discovered to be on fire through the slacking of the
lime; it was towed out into the river and sunk. This, it was conceded,
was the only way to prevent total destruction of the boat by fire. In
an action to recover the insurance, plaintiffs' evidence was to the effect
that the lime was not wet while it was being transferred to the boat, and
that the hatches were carefully closed; also that the boat was thoroughly
repaired late in the summer before the loss. The boat was tested after
it was discovered to be on fire and but one inch of water was found in
the hold. There was no evidence as to the condition of the lime when
it was delivered to the boat. No defects in the boat, or any unseaworthi-
ness were shown; defendant, however, claimed that these were to be
inferred from the slacking of the lime, which, if the lime was dry when
loaded, must have been caused by water entering through a leak in the
boat. The plaintiffs were nonsuited. *Held,* error; that the evidence
did not justify a finding that the slacking was caused by a leak of suf-
ficient size to make the boat unseaworthy; that some of it may have
been wet before loading sufficiently to have caused it to slack.

*Van Wickle* v. *Mechanics & Tr. Ins. Co.* (16 J. & S. 95; 97 N. Y. 350);
*Berwind* v. *Greenwich Ins. Co.* (114 id. 231), distinguished.

Also *held,* that the loss was by fire, within the meaning of the policy.

*It seems* that it is not necessary to show actual ignition, or combustion to
establish a loss by fire.

It appeared that the day after the fire, defendant's agent, who issued the
policy, was notified of the loss and examined the wreck; he received a
verified statement of the circumstances of the loss, which, with a full
statement of his own as to the condition, he mailed to defendant, by
whom they were retained. Defendant's adjuster thereafter wrote to the
agent that he had examined the boat and would "pick her up," *i. e.,*
raise her. Plaintiffs verified formal proofs of loss and executed an assign-
ment of all their interest in the boat to defendant, which was delivered
to and retained by the agent. *Held,* that, a finding by the trial court,

as matter of law, that the boat had not been abandoned by the plaintiffs, and that an abandonment had not been accepted by defendant, was error.

(Argued March 8, 1892; decided April 19, 1892.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made June 7, 1890, which reversed a judgment in favor of defendant entered upon an order which dismissed the complaint.

August 2, 1886, the defendant insured the canal boat "Mary V. Keenan," for one year from that date under a uniform canal hull policy, valued for $1,200, against the "perils   *   *   *   of the inland lakes, rivers, canals, and fires that shall come to the damage of the said vessel, or any part thereof. Excepting all perils, losses,   *   *   *   arising from want of ordinary care and skill in loading and stowing the cargo of said vessel; from rottenness, inherent defects and other unseaworthiness; from gangways and openings through the deck or sides being improperly secured and protected."

The policy contained the privilege to carry lime in barrels. At about eight o'clock A. M., on Friday, May 6, 1887, the captain of the boat and his son (who constituted the crew), began loading it with quick-lime in barrels at Green Island, which is on the Hudson river and about six miles north of Albany. During the day the hold of the vessel (except the forward hatch) was filled, the hatches closed and one car-load placed on deck. On the next day at about four o'clock in the afternoon the boat was completely loaded. Nearly twenty-one hundred barrels were taken on board, about nine hundred being on deck. After the loading was completed the boat was towed to Albany, where it arrived about six o'clock in the afternoon of Saturday, and was placed in a tow to go down the river. Between seven and eight o'clock of the same evening the captain discovered smoke issuing from the hold in the boat, and on examination it was found that the lime was slacking and had engendered so much heat that the deck was

hot, the pitch boiling out of its seams and crackling sounds were heard in the hold. The boat was immediately towed to a wharf near by and the lime on deck was hurriedly unloaded. The boat was then towed a short distance down the river and sunk in water about seventeen feet deep in order to prevent a total loss by fire. It is conceded that there was no other way to prevent the total destruction of the boat by fire, for the hot slacking lime could not be removed and the use of water in the open air would have accelerated chemical action instead of stopping or retarding it. The fire was extinguished when the boat was sunk.

This action was brought November 1, 1887, to recover the sum for which the boat was insured. The defendant answered that the loss did not occur from any of the perils insured against, and that the lime was loaded in a rain storm and became saturated with water, which caused the lime to slack and started the fire. No witnesses were sworn in behalf of the defendant and at the close of the plaintffs' evidence they were nonsuited, upon which a judgment was entered, and which was reversed by the General Term.

*Richard L. Hand* for appellant. No loss occurred by reason of any peril insured against. (*Pitcher* v. *Hennessy*, 48 N. Y. 419; 2 Pars. on Mar. Ins. 231, 518; *Crofts* v. *Marshall*, 7 C. & P. 597; *Barnewall* v. *Church*, 1 Caines, 217; 2 Am. Dec. 180, note; *Talcott* v. *C. Ins. Co.*, 2 Johns. 127; *Briggs* v. *N. A., etc., Ins. Co.*, 53 N. Y. 446; *Babcock* v. *M., etc., Ins. Co.*, 6 Barb. 637; *Austin* v. *Drew*, 4 Camp. 360; 1 Wood on Ins. 236; *Berwind* v. *G. Ins. Co.*, 114 N. Y. 231; *Boyd* v. *DuBois*, 3 Camp. 133.) The legal presumption is that the boat was unseaworthy, and the casualty resulted from such unseaworthiness. (*Van Wickle* v. *M. Ins. Co.*, 97 N. Y. 350; *Berwind* v. *G. Ins. Co.*, 114 id. 231; *Allison* v. *C. E. Ins. Co.*, 57 id. 87; *Draper* v. *C. Ins. Co.*, 21 id. 378; *Talcott* v. *C. Ins. Co.*, 2 Johns. 127; *Morris* v. *Louisville Underwriters*, 14 Fed. Rep. 226; *Garside* v. *O. B. Ins. Co.*, 62 Mo. 322; *Walsh* v. *W. Ins. Co.*, 32 N. Y. 427; *Rogers* v.

*S. M. Co.*, 14 J. & S. 65.) No loss was proved, and there was no evidence giving any measure of damages. (*Murray* v. *Hatch*, 6 Mass. 465; *Peck* v. *M. Ins. Co.*, 3 Mason, 27; *P., etc., Ins. Co.* v. *Ledue*, L. R. [6 P. C.] 224.) There was nothing for the jury. The nonsuit was proper. (*Ayres* v. *Hammondsport*, 29 N. E. Rep. 265; *Hunter* v. *N. Y., O. & W. R. R. Co.*, 116 N. Y. 615; *Kaveny* v. *City of Troy*, 108 id. 571; *Taylor* v. *City of Yonkers*, 105 id. 202; *Searles* v. *M. R. Co.*, 101 id. 661; Phillips on Ins. chap. 17, § 14; *Schuyler* v. *P. Ins. Co.*, 50 Hun, 493.)

*L. M. Brown* for respondents. The evidence was abundantly sufficient to warrant a finding that the loss was caused by one of the perils insured against, and that the defendant never had any defense to the claim. (*Gates* v. *M. C. M. Ins. Co.*, 5 N. Y. 469, 478; *Waters* v. *M., etc., Ins. Co.*, 11 Pet. 213; Wood on Ins. 217; *Matthews* v. *H. Ins. Co.*, 11 N. Y. 9; *C. F. Ins. Co.* v. *Corlies*, 21 Wend. 367; *White* v. *R. F. Ins. Co.*, 57 Me. 91; *N. Y., etc., E. Co.* v. *T. & M. Ins. Co.*, 132 Mass. 377; *Snowden* v. *Guion*, 101 N. Y. 458; *Scripture* v. *L. M. F. Ins. Co.*, 10 Cush. 356; *Ins. Co.* v. *T. Co.*, 12 Wall. 194; *Berwind* v. *G. Ins. Co.*, 114 N. Y. 231; *Van Wickle* v. *M. & T. Ins. Co.*, 97 id. 350; *Palmer* v. *G. W. Ins. Co.*, 116 id. 599; *Wallerstein* v. *C. Ins. Co.*, 44 id. 204; Code Civ. Pro. § 533; *Rehberg* v. *Mayor, etc.*, 91 N. Y. 141.) The evidence was abundantly sufficient to authorize a finding that the defendant company had waived all defenses to the plaintiffs' claim, and estopped itself from denying liability. (*Titus* v. *G. F. Ins. Co.*, 81 N. Y. 410; *Roby* v. *A. C. Ins. Co.*, 120 id. 510; *Brink* v. *H. F. Ins. Co.*, 80 id. 108, 113; *Prentice* v. *K. L. Ins. Co.*, 77 id. 483, 488; *Goodwin* v. *M. M. L. Ins. Co.*, 73 id. 480; *Chamberlain* v. *M. Ins. Co.*, 3 N. Y. Supp 701.) The trial court was fully justified in holding that the evidence was sufficient to authorize the jury to find that Mr. Little had authority to represent the defendant in matters occurring after loss. (*Van Allen* v. *F. J. S. Ins. Co.*, 72 N. Y. 604; *Benninghoff* v. *A. Ins. Co.*, 93 id. 495,

503; *Wyman* v. *P. M. L. Ins. Co.*, 6 N. Y. Supp. 289; *Davis* v. *L. Ins. Co.*, 18 Hun, 230; *McCabe* v. *D. C. M. Ins. Co.*, 14 id. 599.)

FOLLETT, Ch. J.    The plaintiffs do not assert that the loss was occasioned by any of the perils insured against except fire.    The defendant insists that the fire was caused by some part of the lime being put on board during a rain storm, and that the defendant is exempt from liability under the clause which provides that it shall not be liable in case the loss arises " from want of ordinary care and skill in loading and stowing the cargo of said vessel."

The captain of the boat and his son, who placed the cargo on board, testified that the lime was not wet while it was being transferred from the cars to the boat, that the hatches were carefully closed and the barrels on deck were well protected by canvas.    No evidence was given which tended to contradict the positive testimony of the captain and his son.    Under this state of the proof, the Circuit Court could not properly non-suit the plaintiffs on the ground that the boat was improperly laden.    It is also insisted by the defendant that if the lime was dry and in good order when taken on board, it must have been wet by means of a leak while the boat was on its trip from Green Island to Albany, and that, therefore, the boat must have been unseaworthy, as no storm was encountered and no accident happened during the trip.    The undisputed testimony shows that the boat was built in 1880 or 1881, had been kept in good repair and was thoroughly overhauled and repaired late in the summer before the loss.    No witness testified to the existence of defects in the boat, and there is no evidence of unseaworthiness unless, as the defendant contends, they are inferrible from the slacking of the lime.    In support of the defendant's contention, we are referred to *Van Wickle* v. *Mechanics & Tr. Ins. Co.* (16 J. & S. 95 ; aff. 97 N. Y. 350) and to *Berwind* v. *Greenwich Ins. Co.* (114 id. 231).    In both of these cases it was held at Circuit that the boats were unseaworthy when they left their ports.    The reports of *Van*

*Wickle's* case do not agree as to the circumstances attending the loss. The Superior Court said that the boat sank at its dock after a voyage occupying about forty-eight hours, in fine weather and on a smooth sea, having encountered no sea peril.

In the Court of Appeals it was said that within twenty-four hours after the boat began its voyage, it was found abandoned by its master, soon went down, and that it had not encountered any sea peril on the voyage. In *Berwind's* case the boat was being towed from South Amboy, N. J., to New York city, and when a few hours out it sank in a smooth sea, without having met with any accident or sea peril. In both cases the plaintiffs failed to show that the loss was caused by any peril insured against. Those boats were lost by leaks large enough to sink them in a smooth sea, and in fine weather a few hours after leaving port. In both cases it was well held that it was shown that they were unseaworthy when the voyages began. But in the case at bar, there is no evidence that the slacking of the lime was caused by a leak in the boat of sufficient size to cause it to be unseaworthy, or that it was caused by any leak.

When the boat was tested after it was discovered to be on fire, but one inch of water was found. No attempt was made to show what care the lime had received before it was delivered from the cars, and some of it may have been sufficiently wet to cause it to begin to slack before it was loaded. We do not think the evidence justified the Circuit in holding that the slacking was caused by a leak of sufficient size to make the boat unseaworthy.

Was there a fire on board the boat which caused its loss? In *N. Y. & B. D. Express Co.* v. *Traders' & M. Ins. Co.* (132 Mass. 377), there was an insurance against loss by fire on goods which were being transported by a steamboat which came in collision with another boat, causing a fire; the boat was sunk before the goods insured were injured by fire, and this was held to be a loss covered by the policy. In *City Fire Ins. Co.* v. *Corlies* (21 Wend. 367), there was an insurance on goods against loss by fire. The building in which they were kept

was by the direction of the city authorities blown up to prevent the spread of a conflagration. It was found as a fact that the building would have been burned had it not been destroyed; the goods insured were destroyed by the explosion, and it was held that the insurer was liable for the loss.

In the case at bar it clearly appears that the boat would have been destroyed by fire had it not been sunk. After it was sunk it was found that the sides of the boat looked as wood does after it has been "afire, kind of black, charred like, and the barrels all swelled up." A witness who examined the boat about the middle of June with Mr. Owen the defendant's agent, testified: "At the time Mr. Owen and I looked into the boat we found pieces of barrel like, and found several pieces of heads of barrels that were burned into charcoal like." This evidence which was uncontradicted, clearly shows that ignition or combustion had begun before the boat was sunk. This taken in connection with the evidences of fire which were discovered before the boat was sunk, the smoke issuing from the hold, with the deck so hot that the pitch oozed from its seams, makes it reasonably certain that a fire had broken out in the vessel before it was sunk, and which was the proximate cause of the loss. As was well said in *Scripture* v. *Lowell Mutual F. Ins. Co.* (64 Mass. 356–359), "It may well happen that serious damage within the scope of a fire policy shall be done to a building or to its contents, by the action of fire in scorching paint, cracking pictures, glass, furniture, mantel-pieces and other objects, or heating and thus actually destroying many objects of commerce, and yet all this without actual ignition; that is, visible inflammation."

In this case the charred wood renders it reasonably certain that there was actual burning by flame, or at least it was not so certain that there was no fire that the Circuit was authorized to so decide as a matter of law. (May Ins. § 402.) The Circuit clearly erred in holding that the evidence of burning was insufficient to justify the submission of the question to the jury.

Was the evidence sufficient to warrant the jury in finding that the plaintiffs abandoned the boat as a total loss and that the defendant accepted of the abandonment.

On May 9, 1887, the day but one after the loss, Mr. Little, the agent who issued the policy, was notified of the accident and on the same day examined the wreck. May tenth, the captain of the boat verified a statement of the circumstances of the loss and gave it to the defendant's agent, who May eleventh, mailed it, with a full statement of his own of the condition of the wreck, to the defendant. These statements were received on the next day and were retained. In June Mr. Little received a letter from Mr. Owen, defendant's adjuster, in which he stated that he had examined the wreck, and that he would return to Albany in a few days and "pick her up;" the information contained in this letter was communicated to plaintiffs. The term "pick her up" was testified by the witnesses to mean, to raise the boat. July 11, 1887, the plaintiffs verified formal proofs of loss and executed an assignment to the defendant of all of their interest in the boat which were delivered to and retained by the insurer. September 5, 1887, the captain, at the defendant's request, verified and delivered to it a further detailed statement of the loss. There is no evidence that the defendant did not authorize Little to act as its agent in this matter, but on the contrary it appears that they paid the expenses which he incurred in the examination of the wreck. Under this state of the proofs it was error for the Circuit to hold, as a matter of law, that the boat had not been abandoned by the plaintiffs, and that the defendant had not accepted of the abandonment.

The order should be affirmed and judgment absolute rendered against the appellant with costs.

All concur, except LANDON, J., not sitting.

Order affirmed and judgment accordingly.