(Decided 24th March, 1891.)

---

The American Towing Company of Baltimore City *vs.* The German Fire Insurance Company of Baltimore City.

*Fire Insurance—Damage to Boiler of Steam-tug.*

A steam-tug was insured against all loss or damage by fire, "originating in any cause, except invasion," &c., to her "hull,

apparel, machinery, boiler, engine, fixtures, and appurtenances of every description." In an action on the policy of insurance it was HELD:

That the policy did not cover damage to the interior of the boiler of the tug occasioned by the over-heating of the boiler from the furnace fires, owing to the absence of water in the boiler, and not the result of any fire outside of the furnace.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the six prayers following:

1. If the jury find that the policies or either of them, and the renewal receipt mentioned in the evidence, were duly executed and issued to the plaintiff by the defendants for the considerations therein expressed; that on the 22nd day of August, 1889, while the said policies were still in force, the steam-tug Samson, the property of the plaintiff, and mentioned and described in said policies, if the jury shall so find, was damaged or injured in the manner testified to by the witnesses; that such injury or damage was directly caused by or was the result of a fire; that the requirements of the said policies in regard to the furnishing of proofs of loss by the plaintiff to the defendant were duly complied with, except in those particulars which were waived by the agent of the defendant, if the jury shall find such waiver, then the plaintiff is entitled to recover.

2. If the jury find that the boiler of the tug Samson, after having been emptied and cleaned out in the afternoon of the day preceding the fire, was properly filled with water and was so filled at twelve o'clock midnight of that night, then the fact that the jury may find that the injury or damage to said tug by fire on the morning of August 22nd, 1889, may have originated or may have

been the result of the absence of water in said boiler, cannot prevent the plaintiff from recovering in these cases, unless the jury shall believe that such absence of water in said boiler was brought about by design or fraudulent intent on the part of the plaintiff or its agents, and the burden of proof is on the defendant to establish such design or fraudulent intent to the satisfaction of the jury.

3. The plaintiff is entitled to recover in this case, although the jury may find from the evidence that the fire was caused by or was the result of the negligence or carelessness of the agents of the plaintiff.

4. If the jury find for the plaintiff, in estimating the amount of loss, they are not restricted to the amounts claimed by the plaintiff in the proofs of loss furnished the defendant, nor to the amounts mentioned in the reports of Alex. Sanner, John Froehlich and Alex. McClymont shown in evidence.

5. If the jury find for the plaintiff, they may award it such a sum not exceeding $4,000, as they may believe from the evidence it sustained because of the injury or damage to the tug Samson by fire, with interest from the date of the institution of this suit in their discretion, and if they find any such sum, they shall find a verdict for five-eighths of the said sum against the defendant, the German Fire Insurance Company, and a verdict for three-eighths of the said sum against the defendant, the Rochester German Fire Insurance Company.

6. If the jury believe that the policies of insurance and renewal receipt, mentioned in the evidence were duly executed and issued by the defendant to the plaintiff for the consideration therein set forth; that the tug Samson, the property of the plaintiff, and mentioned and described in the said policies, if the jury shall so find, was injured or damaged by fire August 22nd, 1889, as

mentioned in the evidence; that the requirements of the said policies in regard to proofs of loss to be furnished by the plaintiff to the defendant, except in those particulars which were waived by the agent of the defendant, if the jury shall find such waiver: that the wood work and the outside of said boiler were damaged by said fire, and the damage to the outside of said boiler was caused by the burning of said wood work, that other damage was done to the said tug besides that above specified, and besides the injury to the inside of said boiler, they may find a verdict for the plaintiff for such damage.

The defendant offered the following prayer:

That if the jury find from the evidence in this case that the damage to the interior of the boiler of the steam-tug, as testified to in this case, was occasioned by the overheating of the boiler from the furnace fires, owing to the absence of water in the boiler, and was not the result of any fire outside of said furnaces, then that such damage was not the result of such fire as was contemplated by the parties to this cause under the policy of insurance, as one of the perils insured against, and the plaintiff is not entitled to recover for the said damage.

The Court (Phelps, J.) granted the defendant's prayer, and the third, fourth, and fifth prayers of the plaintiff, (the fifth prayer being granted in connection with the defendant's prayer,) and rejected the plaintiff's first, second, and sixth prayers. The plaintiff excepted, and the verdict and judgment being rendered in its favor for a less amount than was claimed, appealed.

The cause was argued before Alvey, C. J., Miller, Irving, Bryan, and McSherry, J.

*Benjamin E. P. Crampton,* and *Beverly W. Mister,* for the appellant.

American Towing Co. *vs.* German Fire Ins. Co.

The plain terms of the policy *"against all loss or dam-age by fire originating in any cause,"* the fire not having originated because of an invasion, &c., covers the whole loss.

This Court ought not to resort to subtle distinctions to determine what the parties meant when the risks assumed by the appellee are expressed in the clear and unambiguous language *"against all loss or damage by fire originating in any cause."* This language is much broader than that commonly used and defined by the Courts—as "loss or damage by fire," or "direct loss or damage by fire." *Cal. Ins. Co. vs. Union Express Co.*, 133 *Mass.*, 415; *Scripture vs. Lowell Mut. Fire Ins. Co.*, 10 *Cush.*, 356.

Where fire is employed, as an agent, so long as it is confined to the place where it is intended to be put, the damage done by the heat, smoke, etc., from that fire, is not covered by an ordinary fire policy. *Wood on Fire Insurance, sec.* 103; *May on Insurance, sec.* 402.

This is the full extent of the doctrine laid down by the case of *Austin vs. Drew*, 4 *Camp.*, 361, relied upon by both Wood and May. *Scripture vs. Lowell Mutual Fire Ins. Co.*, 10 *Cush.*, 359.

*Wm. Pinkney Whyte, Attorney-General,* for the appel-lee.

The rejection of the plaintiff's first, second and sixth prayers, and the granting of the defendant's prayer, constitute the subject of exception. They all involve the same question—was the injury to the interior of the boiler, if occasioned by its overheating, due to the ab-sence of a proper supply of water for its protection, a peril insured against in this policy?

The appellee contends that it was not, and that the rulings of the Superior Court were correct, and the judg-ment should be affirmed. The question is whether the

fire insured against can be charged as the proximate cause of loss, which must be determined from the special circumstances of the case.

The damage, not allowed by the verdict, under the instruction of the Court, was occasioned by the manner in which the machinery was operated and the want of care and attention with which its operation was overlooked. The risk assumed by the Insurance Company was entirely different from that claimed by the appellant. *Millaudon vs. New Orleans Ins. Co.,* 4 *La. Annual,* 15; *Kenniston vs. M. C. M. F. Ins. Co.,* 14 *New Hamp.,* 342; *Wood on Insurance, sec.* 103.

ALVEY, C. J., delivered the opinion of the Court.

This was an action on a policy of insurance against loss by fire, issued by the defendant to the plaintiff, on the 3rd day of September, 1887, for the period of one year, and which was continued by renewal for a second year. By the terms of the policy the defendant, in consideration of $25 paid, caused the plaintiff to be assured to the amount of $2,500 on the steam-tug "Samson," her hull, apparel, machinery, *boiler*, engine, fixtures and all appurtenances of every description, (with privilege to use the Chesapeake bay and its tributaries,) against all loss or damage to the same by fire, originating in any cause except invasion, foreign enemies, civil commotions, riots, of any military or usurped power whatever, for and during the term of one year, &c. And by another clause in the policy, it is provided that "in case steam power is used in and about the property insured, and the boiler should burst, or any property insured is struck by lightning, or explosion occurs, this company is not liable, unless fire ensues, and then for the loss or damage by fire only."

There was a second policy held by the plaintiff upon the tug, issued by the Rochester German Insurance Com-

pany, for $1,500, making the total amount of insurance $4,000; and both policies were running at the time of the occurrence of the fire, in August, 1889; and both companies being sued, the cases were, by agreement, tried together, and the amount of damage awarded by the verdict was duly apportioned, according to the terms of the policies.

It appears that the steamer "Samson" was a large iron ocean tug, with wooden deck and ·house, valued at about $25,000. In August, 1889, while lying at a wharf in Georgetown, D. C., a fire occurred, whereby considerable injury was done to the wood work of the vessel, and the interior of the boiler was seriously damaged. According to the testimony on the part of the plaintiff, the total cost of repair of the damage occasioned by the fire was $3,392.86. Of this amount, the cost of repair of all the damage outside of the boiler, was about $1,200, and the balance of the total cost of repair was for the necessary repair of the *inside of the boiler*. How the fire occurred seems to be involved in something of a mystery. The fire occurred at night; and, according to the testimony of the engineer on the tug, the fire in the furnace was banked, and the boiler well supplied with water at the time he retired for sleep about midnight of the 21st of August; though when the fire was discovered, about 4 o'clock of the morning of the 22nd of August, the boiler was entirely without water, and was very hot. Several expert witnesses were examined at the trial, who had examined the boiler, and they gave it as their unqualified opinion, that, from all the apparent indications, the injury to the interior of the boiler was caused by the fire in the furnace in contact with the boiler, the latter being without water to protect it; "that the inside of the boiler was injured entirely by being overheated, occasioned by the absence of water necessary to protect it." The defendant, by

its duly authorised adjuster, offered to pay for all damage done by the fire outside of the furnace, but refused to pay for the injury done to the interior of the boiler, by the action of fire in the furnace, insisting that such injury was not embraced within the risk insured against. For all the injury done outside the boiler, the jury, under the instructions of the Court, awarded damages to the plaintiff, but not for the injury done to the interior of the boiler. And the only question on this appeal is, whether the Court was right, in its instruction to the jury, in holding that the injury to the interior of the boiler caused by the fire in the furnace, was not a damage contemplated by the parties to the policy.

The Court instructed the jury, upon request of the plaintiff, that the latter was entitled to recover, although the jury might find that the fire was caused by or was the result of the negligence or carelessness of the agents of the plaintiff; and that, in estimating the amount of loss, the jury were not restricted to the amount claimed by the plaintiff in the proofs of loss furnished to the defendant; nor to the amounts mentioned in the report of certain referees shown in evidence. And by the fifth prayer of the plaintiff, the jury were instructed that they could award to the plaintiff such a sum not exceeding $4,000, as they might find the plaintiff sustained, because of the injury or damage to the tug Samson by fire, with interest, &c.; and if they should find any such sum, they should find a verdict for five-eighths of said sum against the defendant, and a verdict for three-eighths of said sum against the Rochester Fire Insurance Company. This latter instruction was given in connection with an instruction granted at the instance of the defendant, to the effect, that if the jury should find from the evidence that the damage to the interior of the boiler of the steam-tug was occasioned by the overheating of the boiler from the furnace fires, owing to the absence of

water in the boiler, and was not the result of any fire outside of said furnace, then such damage was not the result of such fire as was contemplated by the parties under the policy of insurance, as one of the perils insured against, and that the plaintiff was not entitled to recover for such damage.

The terms of the policy in this case are such as are ordinarily employed in fire policies on steam vessels, where the risk is taken on the hull and all the machinery and appurtenances, of the vessel. And it is conceded that for any injury done by fire to any part of the vessel, or her machinery, whether to the boiler or any other part, if the injury was done by ignition or heat generated beyond the furnace, where the fire was intended to burn, the insurance company would be liable. But the subject of the insurance here necessarily excepts the operation of fire to a certain extent. The subject of the policy is a steam-tug, her boiler and other machinery. Of necessity, fire was to be maintained in the furnace, and in contact with the boiler, as means to generate the motive power by which the vessel could be propelled. The burning or warping the bars of the grate in the furnace, though produced by the action of fire, could hardly be supposed to be within the scope of the risk insured against, however general the terms of the policy. And if that be true of the furnace, it is difficult to perceive why it is not equally true of such parts of the boiler as are brought in contact with the fire in the furnace, or the heat evolved therefrom. The fire, while in the furnace, was in its proper place, and where it was intended to be; and it was placed there to act upon the boiler, which, in course of time, would be burnt out or warped, as the grate in the furnace would be, by the continued action of fire thereon. And if such results of the action of fire upon these materials, while in ordinary use, are not within the risk, it would be difficult to say upon

what degree of heat or under what conditions, the liability under the policy would attach for injury caused by the action of fire while confined to the furnace, and producing no external ignition. If a person has his house insured against all loss or damage by fire, and he should make a fire in his grate or fire-place of such intense heat as to crack his chimney, or to warp or crack his mantle-pieces, it could hardly be contended that he could hold the insurance company liable for such damage, though the damage was unintentionally allowed to be produced by the action of fire. In such case the fire would not have extended beyond the proper limits within which it was intended to burn; but the heat emitted therefrom would have produced effects not intended by the insured.

No doubt there are many instances where the insurer has been held liable for injury done to buildings and furniture by heat or smoke, *without actual ignition,* where the heat or smoke has proceeded from fire outside of and beyond the limits of the place where it was intended, by the contract of insurance, to burn. But that is a different question from that presented by the instruction granted at the instance of the defendant in this case, and in accordance with which, we must assume, the jury have found the facts to exist. Here, according to the facts found by the jury, the internal injury to the boiler was produced by the action of fire in the furnace, and not beyond that limit.

We have found no decided case directly in point of fact with this; but text writers of reliable authority, drawing their conclusions from analogy, would seem to maintain fully the proposition embodied in the instruction granted by the Court below at the instance of the defendant.

In *Wood on Fire Insurance, sec.* 103, it is laid down as text law, that "Where fire is employed as an agent,

American Towing Co. *vs.* German Fire Ins. Co.

either for the ordinary purposes of heating the building, for the purposes of manufacture, or as an instrument of art, the insurer is not liable for the consequences thereof, so long as the fire itself is confined within the limit of the agencies employed, as, from the effects of smoke or heat evolved thereby, or escaping therefrom, from any cause, whether intentional or accidental. In order to bring such consequences within the risk, there must be actual ignition outside of the agencies employed, not purposely caused by the assured, and these, as a consequence of such ignition, *dehors* the agencies.'' And in connection with this passage of his text, the author refers to and states the facts of the case of *Austin vs. Drewe*, as reported in 4 *Camp.*, 361, and 6 *Taunt.*, 436. But in regard to that case, Mr. May, in his work on *Insurance, sec.* 402, says: ''It has often been said that loss by fire means by actual ignition; and for this the early case of *Austin vs. Drewe*, 6 *Taunt.*, 436, is cited as an authority, which simply decides that an insurance company is not liable, on a policy insuring against *all damage by fire* to the stock and utensils of a sugar-house, for damage done to the sugar by the heat of *the usual fires employed* for refining, *the fires being unusually intense by reason of negligence in their management.* And it has been suggested that the true ground of that decision was, that insurers do not undertake to be responsible for the excessive use of fire purposely used, whereby the article to which the fire is purposely applied is damaged, whether by heat or ignition; and that they would be no more liable in this case than they would be where bread is overbaked or coffee is overroasted. At all events, if the case of *Austin vs. Drewe* decides anything more than is here suggested, it has been denied to be good law;'' and the author refers to the case of *Scripture vs. Lowell Mut. Fire Ins. Co.*, 10 *Cush.*, 356, where the criticism suggested was made upon the case of *Austin*

*vs. Drewe* by Judge CUSHING. The criticism, however, if well founded, does not seem to involve anything material to. this case. The conclusion deduced from the case of *Austin vs. Drewe,* and which Judge CUSHING thinks the proper, and the sound and sensible one, is that stated by Mr. May, and which we have already quoted.

We think the Court below properly instructed the jury by granting the plaintiff's third and fourth prayers, and the plaintiff's fifth prayer in connection with the prayer offered by the defendant, and that there was no error in rejecting the first, second and sixth prayers of the plaintiff; and therefore the judgment must be affirmed.

*Judgment affirmed.*

(Decided 24th March, 1891 )