OF THE

STATE OF IOWA

AT

DES MOINES

JANUARY AND MAY TERMS, 1922.

---

G. W. HANSEN, Appellant, v. LE MARS MUTUAL INSURANCE ASSOCIATION, Appellee.

INSURANCE: Cause of Loss—Soot from Oil Stove. Loss occasioned solely by soot and smoke escaping from an oil stove because the wicks thereof were turned too high, is not such a loss as is covered by a policy of insurance against "fire."

*Appeal from Sioux District Court.*—WILLIAM HUTCHINSON, Judge.

FEBRUARY 14, 1922.

ACTION upon a policy of fire insurance, to recover thereunder damages caused by smoke and soot. At the close of plaintiff's evidence, there was a directed verdict for the defendant. The plaintiff appeals.—*Affirmed.*

*C. A. Plank,* for appellant.

*J. T. Keenan* and *Van Oosterhout & Kolyn,* for appellee.

EVANS, J.—The plaintiff was a holder of an insurance policy from the defendant company which covered his household

goods. He averred in his petition that he suffered a loss from fire to such household goods to the amount of $428, in that damage had been caused to his household goods by smoke and soot which escaped from his oil stove and filled his house to such an extent as to cause the damage complained of. The story of the fire, in brief, is that plaintiff arose at 5 o'clock in the morning, and lit the burners of his oil stove in the kitchen, for the purpose of heating a boiler full of water which had been set there on the night before. The ultimate purpose was to heat the water for use in the family washing, to be done that morning. Having lit the burners with a match, the plaintiff went back to bed and fell asleep. One hour later, he was awakened by the smoke and soot which filled his house. He immediately repaired to the kitchen, and found that the flames from his burners extended nearly to the top of the boiler, and were emitting in great quantities the smoke and soot complained of. He removed the cause of the smoke and soot by turning out the wicks in the burners. He testified: ''I went over there and turned them out.'' The following statement by the trial court is a fair summary of the record:

''There was no fire except that under the boiler, as he tells it. The only thing that was necessary to extinguish the fire was to turn down the burner. The burner was turned down, and the fire under the stove went out; smoke disappeared. There is no evidence here that there was any leak, that there was any fire in the pan, or that the tank had ignited. The only evidence here is that the burner that was started was turned up too high, or became overloaded, which caused more fire and flame than was reasonably and necessarily intended when it was lighted. It is a matter of common knowledge with those who use the oil stoves that they will smoke, if they are not particularly watched and cared for, and I cannot see any theory upon which the plaintiff can recover in this case. There was no leaking oil, no ignition of the tank, nothing necessary to put it out but to turn down the burner, and it went out.''

Nothing is claimed for any damage done by flame or heat, except as the same produced the smoke and soot. The defendant denied all liability for the loss, on the ground that there was no fire, within the contemplation of the policy. It is not

essential to the plaintiff's right of recovery that he should show that he had suffered loss by the actual burning of any part of his property, but it is essential that it should appear that the smoke and soot from which he suffered resulted from a "hostile" fire, rather than from a "friendly" one. Ordinarily, a fire in a stove or furnace and subject to control in such place is a "friendly" fire, and damage for smoke and soot therefrom is not within the contemplation of an insurance policy. The rule in such cases is stated in Wood on Insurance, Section 103, as follows:

"Where fire is employed as an agent, either for the ordinary purposes of heating the building, for the purposes of manufacture, or as an instrument of art, the insurer is not liable for the consequences thereof, so long as the fire itself is confined within the limit of the agencies employed; as from the effects of smoke or heat evolved thereby or escaping therefrom, from any cause, whether intentional or accidental. In order to bring such consequences within the risk, there must be actual ignition outside of the agencies employed, not purposely caused by the assured, and these, as a consequence of such ignition, *dehors* the agencies."

In *Cannon v. Phoenix Ins. Co.,* 110 Ga. 563 (35 S. E. 775), it is stated as follows:

"It does not appear from the proofs of loss that there was any fire in or about the building, except in the stove, where it was intended to be built. This fire did not spread from where it was built and intended to remain. It was, therefore, all the time during the alleged injury and damage to the goods, what is termed in the books as a 'friendly,' and not a 'hostile,' fire. It is true there is sound authority for the proposition that an insured can recover loss occasioned by smoke, soot, etc., thrown out by a fire; but we think in these cases it will be found that such matter causing injury was the product of a hostile fire. * * * If a fire should break out from where it was intended to be, and become a hostile element by igniting property, although it might not actually burn the property insured, yet if it caused injury thereto by smoke or heat or other direct means, damages would be recoverable."

The plaintiff relies upon the Wisconsin case of *O'Connor v.*

*Queen Ins. Co.*, 140 Wis. 388 (122 N. W. 1038), wherein recovery was allowed. The fire in that case was described by the court as follows:

"The heat was so intense as to char and injure furniture, and the great volumes of smoke and soot greatly injured the furnishings and personal property of the plaintiff. It does not appear from the evidence that there was any ignition outside of the furnace, although the fire was so intense as to overheat the chimney and flues, and char furniture in the rooms. The evidence shows that the chimney was so hot it seemed as though it was on fire; that the fire was burning fiercely in the furnace; around the mopboards was burned and the mopboards blistered; the wall paper charred and burned, and the chimney cracked from the excessive heat. * * * The fire was extraordinary and unusual, unsuitable for the purpose intended, and in a measure uncontrollable, besides being inherently dangerous because of the unsuitable material used."

Reliance is also had upon the case of *Collins v. Delaware Ins. Co.*, 9 Pa. Sup. Ct. 576. The fire was described by the court as follows:

"The plaintiff's goods were not burned, but were damaged by smoke and soot; but it is well settled that a policy against 'direct loss or damage by fire' may cover loss other than by actual burning, such as by water used to extinguish the fire, and by smoke from the fire. If, however, the fire itself be not insured against, as it ordinarily is not, when it is kept within the place that is fitted and intended for it, there is no liability for such consequences as the escaping of smoke or gas. We cannot do better than to adopt the illustrations used in a well considered Massachusetts case. If a stove should be cracked and spoiled by a fire kindled in it to warm the house, or if a fire in a fireplace should crack the mantel or scorch valuable furniture left too near it, or injure property by its smoke which the chimney failed to carry off, or if a lamp should throw off soot or smoke in such quantities as to cause damage to property, in every such case it may be conceded, if the fire burned nothing but that which was intended to be burned for a useful purpose in connection with the occupation of the house, and if

it did not pass beyond the limits assigned to it, the insurance company would not be liable.''

It appears also in that case that the fire had melted off a cap of the container, and was burning from the inside thereof.

From the foregoing it will be seen that close questions may arise over the dividing line between a ''hostile'' and a ''friendly'' fire. In the case before us, we think it cannot be said that the evidence was sufficient to justify a finding of a ''hostile'' fire, within the contemplation of the policy. It was manifestly a case where the wick had been turned too high, from which cause smoke and soot were inevitable from the beginning; and the fire was at all times subject to control by merely turning back the wick. The only burning or charring of any kind done by the flame was upon the wick. So far as appears, all the smoke and soot came from the wick.

We feel compelled to hold, therefore, that the trial court properly sustained the motion for a directed verdict.—*Affirmed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.