SIGOURNEY PRODUCE COMPANY, Appellant, v. MILWAUKEE MECHANICS' INSURANCE COMPANY, Appellee.

No. 40723.

MARCH 10, 1931.

*Shaw & Yoder,* for appellant.

*Hamilton & Updegraff,* for appellee.

GRIMM, J.—This is an action at law on a fire insurance policy, insuring the plaintiff "against loss and damage by fire." The plaintiffs were engaged in the poultry business in the city of Sigourney. During the month of January, 1929, a quantity of fresh eggs was stored in one of the rooms in plaintiff's establishment, which room was known as the "cooler." An oil stove was used to keep the eggs in the cooler from freezing in severe weather. On the 18th day of January, 1929, at about 11 o'clock P.M., the said "cooler room" was found filled with smoke, and warm "like summer." The party who discovered this condition turned on an electric light, and proceeded to the point where the oil stove was resting in a metal pan on the floor. This oil stove appears to have been of the ordinary form, containing a burner and wick. When discovered, the flame of the wick had gotten too high, and was flaring up into the top of, and possibly

to some extent out of the top of, the stove. Kelley, who made the discovery, picked up some sacks which were lying on the floor near by, and carried the stove out of the room and out of the building. He testified that, having carried the stove out of the building, he put out the flame in the stove by "smudging it with sacks." There is no evidence in the record to the effect that the fire could not have been turned out by turning down the wick in the usual way. It does not appear that anything in the room was burning. In other words, the fire was confined entirely to a burning of the wick in the stove. Some smoke and soot passed into the room from the stove. The damages claimed by the plaintiff, however, arose from an excess of heat in the room, which heat, it is claimed, damaged the eggs in the "cooler."

It is not here contended that any portion of the building or any furniture or other property in the room was consumed or physically changed by contact with the flame. In other words, the only fire that existed in the cooler room prior to and at the time the stove was being carried out was the flame of the wick in the stove. The stove had been lighted in the cooler for the avowed purpose of creating some heat in the cooler, in order that the eggs might not freeze. Manifestly, the heat produced by the stove was much in excess of what was intended. However, the flame was lighted by the plaintiff. It was intended that the flame should produce heat in the stove, and, as a result, it was intended that the room should be kept warm. Presumably, it was not intended that the flame in the stove should rise to the point where it would produce smoke or soot, and it was not intended that it should produce as much heat as it did in the room.

It is the contention of the appellant that what was originally a "friendly fire" afterwards became an "unfriendly fire," and the damage of which complaint is made was the result of the fire after it became "unfriendly." After a very careful examination of the entire record and the cited authorities, we cannot agree with the appellant.

The damage as alleged in this case is not covered by the insurance policy in question. There was here no "loss and damage by fire," in contemplation of the parties, under the law. There was here merely *more* "friendly fire" than was intended.

The oil stove wick burned too high. The oil stove became too hot, and by reason thereof, as is claimed by the appellant, the temperature in the room arose to the point where it damaged the eggs. The same result might have obtained, had the room been heated by an ordinary hot-air furnace, in which, by mistake or otherwise, the drafts were left open, and by reason thereof the fire burned to the point where more heat was produced in the room than was desired or expected. The same result might have occurred in many different ways through many different instrumentalities provided for heating the room to prevent freezing. The basic point is that in this case nothing burned which the plaintiff did not intend should burn. All that happened was that there was *more burning* than was intended. That is to say, the flame of the wick in the stove was higher and hotter than was intended. The smoke and soot and heat all emanated from the burning wick. This necessarily follows, because nothing else burned but the wick. All of the consequences of which complaint is here made resulted from a ''friendly fire,'' and therefore the plaintiff cannot recover. Many authorities might be cited in support of this finding. We will only refer to a few.

In *Hansen v. Le Mars Mut. Ins. Assn.*, 193 Iowa 1, this court quoted with approval from Wood on Fire Insurance, Section 103, as follows:

'' 'Where fire is employed as an agent, either for the ordinary purposes of heating the building, for the purposes of manufacture, or as an instrument of art, the insurer is not liable for the consequences thereof, so long as the fire itself is confined within the limit of the agencies employed; as from the effects of smoke or heat evolved thereby or escaping therefrom, from any cause, whether intentional or accidental. In order to bring such consequences within the risk, there must be actual ignition outside of the agencies employed, not purposely caused by the assured, and these, as a consequence of such ignition, *dehors* the agencies.' ''

In the same case, this court quoted from and approved *Cannon v. Phoenix Ins. Co.*, 110 Ga. 563 (35 S. E. 775), as follows:

''It does not appear from the proofs of loss that there was

any fire in or about the building, except in the stove, where it was intended to be built. This fire did not spread from where it was built and intended to remain. It was, therefore, all the time during the alleged injury and damage to the goods, what is termed in the books a 'friendly' and not a 'hostile' fire. It is true there is sound authority for the proposition that an insured can recover loss occasioned by smoke, soot, etc., thrown out by a fire; but we think in these cases it will be found that such matter causing injury was the product of a hostile fire. If a fire should break out from where it was intended to be, and become a hostile element by igniting property, although it might not actually burn the property insured, yet, if it caused injury thereto by smoke or heat or other direct means, damages would be recoverable.''

See, also, *Githens v. Great American Ins. Co.*, 201 Iowa 266.

Reliance is placed by the appellants upon *Cabbell v. Milwaukee Mechanics Ins. Co.*, 218 Mo. App. 31 (260 S. W. 490). In that case, a heating plant exploded, and a large quantity of burning coal was forced out on the floor of the furnace room, where it continued to burn, causing smoke and soot to permeate the building, causing the damage of which complaint was made.

In *Way v. Abington Mut. Fire Ins. Co.*, 166 Mass. 67 (43 N. E. 1032), by reason of emptying the contents of a waste basket in a stove, the soot and other contents of the chimney caught fire, and as a result, smoke and soot filled the house, damaging the furniture and other contents of the house.

Others of the cases cited by appellant are not in point, and with some we do not agree.

In *Lavitt v. Hartford County Mut. Fire Ins. Co.* (1927), 105 Conn. 729 (136 Atl. 572), that court said:

''It was early held that the word 'fire' as used in policies of fire insurance meant 'hostile fire,' as distinguished from 'friendly fire.' The leading case is that of *Austin v. Drew,* 4 Campb. 360, 128 English Reprint, 1104. In that case nothing was consumed by fire, but, by improper management of the heating apparatus, heat, smoke, and soot were emitted, without any escape of the fire from the place where it was designed to be, and the loss by heat, smoke, and soot was held not covered by a policy against loss by fire. * * * The rule has had well nigh

universal approval in those courts in this country where the question has directly arisen, and by text-writers generally. *Way v. Abington Mutual Fire Ins. Co.* (1896), 166 Mass. 67, 43 N. E. 1032; *McGraw v. Home Ins. Co.* (1914), 93 Kan. 482, 144 Pac. 821; *American Towing Co. v. German Fire Ins. Co.*, 74 Md. 25, 21 Atl. 553; *Gibbons v. German Ins. & Sav. Institution* (1889), 30 Ill. App. 263; *Cannon v. Phenix Ins. Co.* (1900), 110 Ga. 563, 35 S. E. 775; *Fitzgerald v. German-American Ins. Co.* (1899), 30 Misc. 72, 62 N. Y. Supp. 824; *Hansen v. Le Mars Mutual Ins. Asso.* (1922), 193 Iowa 1, 186 N. W. 468; Richards on Insurance (3d Ed.), Par. 231; Beaumont on Insurance, p. 37; 1 Wood on Fire Insurance (2d Ed.), p. 236.''

This rule is in harmony with our own previous decisions. The cause must be, and is,—*Affirmed.*

FAVILLE, C. J., and EVANS, MORLING, and KINDIG, JJ., concur.