LEWIS SOLOMON *et al. vs.* UNITED STATES FIRE INS. CO. OF NEW YORK.

MARCH 10, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

STEARNS, C. J.   The above entitled case is a consolidated case resulting from the consolidation for trial by stipulation of parties and by the order of the Superior Court of seventeen actions.   These cases are actions on fire insurance policies of standard form to recover for damage by smoke and soot to the plaintiffs' building and the contents thereof. Each policy insured plaintiffs against all direct loss or damage by fire.   Attached to and a part of each policy was a permit allowing the insured to use an oil burning system in the premises in consideration of the compliance by him with certain warranties with respect to the quality and storage of the oil used.

The facts are undisputed.   Plaintiffs owned and conducted a department store in Westerly.   The building was heated by an oil burning furnace which was controlled by a thermostat located on a wall of the first floor of the store near the entrance.   About seven o'clock on the morning of December 17, 1927, smoke was observed issuing from the windows of the store.   The fire alarm was sounded and the fire department and plaintiffs soon arrived at the store. The building was found to be filled with smoke to such an extent that it was impossible to remain in the store.   At plaintiffs' request, no water was turned on by the firemen as it was thought that the smoke came from the furnace in the basement of the building.   The door to the basement in the rear alleyway was forced open and several firemen

accompanied by plaintiff's son entered the basement. As they walked into the smoke-filled basement they saw, through a window in a partition wall, that flame was issuing from the rear of the furnace. Unable to remain because of the dense smoke, they returned to the street in front of the store. The chief of the fire department testified that before they left the basement the flame flared up about three times and then ceased, and there was darkness. In the meantime the man who a few days before had installed the thermostat arrived on the scene, rushed into the store, pulled the thermostat from the wall and thereby shut off the oil supply of the furnace. The fire at once went out, the doors and windows were then opened and the smoke and soot was blown out of the building.

An examination of the furnace disclosed the fact that the front door was open and that more than half of the smoke pipe which connected the rear of the furnace with the chimney had fallen away from the furnace on to the floor while the rest of the smoke pipe was still suspended from the ceiling. There was no ignition of the building or its contents. All the damage was caused by smoke and soot.

At the conclusion of plaintiffs' evidence defendant rested its case and moved for the direction of a verdict. This motion was granted. The case is here on plaintiffs' exceptions to the refusal to submit the case to the jury and to the direction of a verdict for defendant.

The fundamental question is whether plaintiffs' damage was caused by smoke and soot from what is known as a "hostile fire" as distinguished from a "friendly fire." Defendant admits its liability for damage caused by the former, but not by the latter. Plaintiffs maintain that since the flames escaped from the limits within which they were intended to be confined, the fire was hostile. Defendant contends that, although the flames escaped from their normal limits, nevertheless nothing was ignited or burned outside of the furnace which caused the plaintiffs' damage, and that such damage was caused by smoke and soot from a fire which was not hostile but friendly.

Certain facts are to be noted. There was only one fire which was kept burning in the place where it was intended to be by a continuous supply of fuel which was constantly running into the furnace. The combustion of the oil was in the furnace and the flame, smoke and soot were the natural results of such combustion. Neither the building nor its contents were ignited. The flame from the broken smoke pipe did not originate outside the furnace. There is no evidence that such outside flame produced any additional or separate smoke or soot. When the automatic supply of oil was discontinued, the fire in the furnace ceased and the production of smoke and soot came to an end. The fire consumed only what was intended to be consumed. It was extinguished merely by the discontinuance of the supply of fuel.

The language of the standard policy is not the language of the insurer; it is prescribed by statute and hence should not be extended by construction. All direct loss or damage by fire is not covered by this policy. Chapter 258, G. L. 1923, "Of Insurance Policies" makes many exceptions to the direct losses which otherwise would be recoverable; for example, one exception is that the insurer shall not be liable for loss caused directly or indirectly by explosion of any kind, unless fire ensues and in that event for the damage by fire only.

In the instant case the door of the furnace was found to be open and part of the lining of the door was lying on the floor. If the separation of the smoke pipe and the opening of the furnace door were caused by an explosion, the statutory provision would govern and there could be no recovery for smoke and soot which escaped into the building. Assuming that there was no explosion, the question then is: Was the fire "hostile" or "friendly"? This characterization of fires in insurance cases first appears, so far as we are aware, in *Way* v. *Abington Mutual Fire Ins. Co.*, 166 Mass. 67, decided in 1896. In that case a fire lighted in a stove ignited the soot which had accumulated in the flue and the

chimney, smoke from the burning soot escaped into several rooms in the building and caused damage to tobacco stored therein. It was held that this was a loss by fire which was covered by a policy insuring the property against all loss or damage by fire. The court says: "We are inclined to the opinion that a distinction should be made between a fire intentionally lighted and maintained for a useful purpose in connection with the occupation of a building and a fire which starts from such a fire without human agency in a place where fires are never lighted nor maintained, although such ignition may naturally be expected to occur occasionally as an incident to the maintenance of necessary fires, and although the place where it occurs is constructed with a view to prevent damage from such ignition. A fire in a chimney should be considered rather a hostile fire than a friendly fire, and as such, if it causes damage, it is within the provisions of ordinary contracts of fire insurance." In that case there were two distinct fires, one intentional, the other accidental and, as plaintiff's damage was caused by the accidental fire, a recovery was allowed. The distinction thus made between fires causing damage seems to be reasonable and to result in a proper consideration of the rights of both the insurer and the insured.

In Richards on Insurance, 4th Ed. §217, the author summarizes the law as follows: "Loss by fire means the result of the ignition of the property insured or of some substance near to it. Thus, the action of fire in charring, scorching, cracking, smoking or heating may be included though no flame be seen. Again, it is said that if the fire is in no respect a hostile fire, that is, if the fire itself does not pass beyond the limits assigned for it, as, for example, a stove, furnace, lamp, oil burner, or similar receptacle intended to hold fire, then the results of smoke and heat, where there is no ignition outside the agencies employed, are not covered by the policy, nor is damage by any degree of heat alone without flame or glow covered. If the fire, however, extend beyond the place where it belongs it becomes a hostile fire, which, indeed, is the peril insured against."

In the leading case of *Austin* v. *Drew*, 4 Camp. 360, the property insured was a factory of seven or eight stories; on the ground floor there was a stove connected with a chimney which went to the top of the building. In this chimney was a register which had to be opened when there was a fire in the stove. A servant forgot one morning to open this register and as a result smoke and heat escaped into a room where sugar was drying and the sugar was damaged. It was held that no recovery could be had on the policy of fire insurance as there was no fire, except in the stove and the flue, as there ought to have been, and the loss was occasioned by heat. The court also stated that the fire was never excessive and was always confined within its proper limits; that, had the fire been brought out of the flue, and had anything been burnt, the insurance company would have been liable. In an interesting article entitled: "The meaning of fire in an insurance policy", 24 Harvard Law Review, p. 119, the decisions since *Austin* v. *Drew* are considered.

The damage in the case at bar was caused by one fire which was intentional and within the place where it was intended to be. The fact that this fire was excessive and that flame for a short time was seen to be outside the furnace did not change the nature of the fire. The material consumed and the combustion thereof was not accidental; it was intentional. The fire was immediately put out by shutting off the supply of fuel. The flame outside the furnace was merely an extension of the flame within the furnace and was subject to one and the same control. No second fire resulted from the intentional fire.

We are of the opinion that, as the damage was the direct and proximate result of an intentional fire, plaintiff is not entitled to recover. As the facts are undisputed the question is one of law. The refusal to submit the case to the jury was correct as was also the direction of the verdict. Decisions precisely in point are few. In accord with our decision see *Lavitt* v. *Hartford County Mutual Fire Ins. Co.*,

105 Conn. 729; *Hanson* v. *Le Mars Mutual Ins. Ass'n,* 193 Iowa 1, and notes on the *Hanson* case in 20 A. L. R. 964; *Cannon* v. *Phoenix Ins. Co.,* 110 Ga. 563. Cases to the contrary are *Coryell* v. *Old Colony Ins. Co.,* 118 Neb. at 312; *O'Connor* v. *Queen Ins. Co.,* 140 Wis. 388. It is to be noted that both of the last mentioned cases were decided by divided courts.

It is a matter of common knowledge that the use of oil as a fuel for furnaces has become common only in the last few years and that damage from the escape of smoke and soot from such a fuel as oil is not infrequent. The statute (C. 258) authorizes the adding to or the modifying of the provisions of the standard form of policy by riders to be attached thereto. If protection from smoke and soot from a furnace fire is desired by the insured, it can be readily obtained by paying the premium for the additional risk.

The plaintiffs' exceptions are overruled and the consolidated case is remitted to the Superior Court with direction to enter judgment for each defendant on the directed verdict.

*John P. Beagan, P. Henry Quinn,* for plaintiffs.
*Sherwood & Clifford, Sidney Clifford,* for defendant.