ROMEYN A. SPARE ET AL. *v.* GLENS FALLS INSURANCE COMPANY

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued May 5—decided July 11, 1950

*Neil F. Murphy,* for the appellants (plaintiffs).

*Wallace W. Brown,* for the appellee (defendant).

BROWN, C. J.   The plaintiffs brought this action to recover on a policy of fire insurance issued by the defendant on their house in Bristol.  Damage was claimed to have been sustained by fire when an oil-burning furnace in the cellar of the house became overheated on January 22, 1946.  The defendant denied liability on the ground that any fire which caused damage to the plaintiffs was a friendly fire, i. e., a fire not embraced within the terms of the policy.  The court rendered judgment for the defendant and the plaintiffs have appealed.

We summarize the material facts, which, except in the respect stated in the next paragraph, are not subject

to correction. The plaintiffs owned a house in Bristol. It was heated by steam, generated by an oil-burning furnace located in the basement. The defendant insured the plaintiffs' house against loss or damage by fire. While this policy was in effect, on January 22, 1946, certain portions of the furnace became badly overheated owing to the failure of a safety shut-off. The furnace consisted of a unit, with the oil burner built in. It was constructed of noncombustible materials consisting of steel, brick, glass insulation and an ornamental exterior finish which heat would not kindle. The only fire involved in the incident which constitutes the basis of this action was the oil fire which burned within the combustion space or spaces inside the furnace itself, from which it did not escape. No fire occurred outside of that in the furnace as so confined. The exterior of the furnace did not itself become kindled. Fire which burns within a furnace in the combustion space is a friendly fire. Since this fire did not escape to the outside part, it did not become a hostile fire.

The plaintiffs have assigned error in the court's refusal to find that the ornamental finish or paint on the outside surface of the furnace "was ignited" and "flamed." They have also assigned error in the court's finding that no heat from the fire caused "any loss or did any damage outside said furnace." The court was fully justified in refusing to find as requested. If the words last quoted, however, are to be construed as stating that the fire caused no damage to the ornamental finish or paint on the exterior of the furnace, this finding by the court was unwarranted. The undisputed evidence is that the exterior finish or paint was damaged by the heat from the fire within the furnace. While, strictly, the plaintiffs are not entitled to this fact, since they failed to request the court so to find, we give

them the benefit of it in passing upon their sole claim of law, that this was a hostile fire and was therefore covered by the policy. The court reached the contrary conclusion, that is, that it was a friendly fire, that therefore it did not fall within the terms of the policy and that, accordingly, the defendant was not liable.

The section of the sheet metal exterior of the furnace and the photographs which are exhibits in evidence indicate that the outside finish was disintegrated by the heat of the fire within the furnace, which had caused it to blister and flake off in spots. The question determinative of the appeal is whether the fact that the fire, confined within the combustion spaces inside of the furnace, caused, in consequence of the overheating, the exterior finish to shrivel and disintegrate, although it neither ignited nor burned, required the court to find that the fire was hostile as distinguished from friendly. To state it more succinctly, did the mere fact that the furnace generated excessive heat with this result, by operating in a manner different from that expected or designed, convert what had been a friendly fire into a hostile one? The answer is found in *Lavitt* v. *Hartford County Mutual Fire Ins. Co.*, 105 Conn. 729, 136 A. 572. In that case, the distinction is made between a fire which is confined to the space where it is designed to be and a fire which kindles outside of that space. The former was held to be a friendly fire. We said (p. 736): "While the use of the term 'hostile fire' does suggest, superficially, any fire which by getting beyond control or operating in a manner different from that expected or designed, causes damage . . . yet when fully considered, it becomes obvious that the wide range of circumstances upon which liability would thus depend [under such a definition] would tend to render each case mostly a law unto itself and introduce elements of great uncertainty in determining the rights of the par-

ties. . . . Though the present distinction may seem arbitrary, yet it is of long standing, makes for certainty in the ascertainment of rights, and has been acted upon in the writing of so vast a number of insurance contracts throughout this country, that its soundness may not, at this time, be questioned."

A friendly fire has been defined as "a fire intentionally built within a stove or furnace or in some other proper place contemplated by both insured and insurer." *Coryell* v. *Old Colony Ins. Co.*, 118 Neb. 303, 307, 229 N. W. 326. Such a fire is not within the contemplation of the contract of insurance. *Reliance Ins. Co.* v. *Naman*, 118 Tex. 21, 27, 6 S. W. 2d 743. As pointed out in the *Lavitt* case, supra, for loss sustained by a fire confined to the space where it is designed to be, under the standard form of policy, the insurer is not liable. When, however, a friendly fire escapes from the agency employed to restrain it and damages property by igniting it or, while still confined therein, causes a secondary fire to start outside of the agency, it becomes a hostile fire, and for loss so caused the insurer must indemnify the owner. Accordingly, the distinction is clearly drawn between a case where, as here, damage results in consequence of excessive heat from a fire confined as designed, with no external burning, and one where such excessive heat kindles a secondary fire. It was remarked in a similar case: "[T]here was excessive heat, but no fire where it ought not to have been. Fire and heat are not one, but cause and effect; and damage by heat is not insured against in terms, and is covered by the policy only where the misplaced fire causes it." *Gibbons* v. *German Ins. & Savings Institution*, 30 Ill. App. 263, 265. Where the fire has not extended beyond the proper limits within which it was intended to burn, the fact that the heat emitted therefrom has, without external ignition, produced effects

not intended, with consequent damage to the insured, does not render the insurer liable therefor. *American Towing Co.* v. *German Fire Ins. Co.*, 74 Md. 25, 34, 21 A. 553. In summary: "[I]f the fire itself does not pass beyond the limits assigned for it, as, for example, a stove, furnace, lamp, oil burner, or similar receptacle intended to hold fire, then the results of smoke and heat, where there is no ignition outside the agencies employed, are not covered by the policy, nor is damage by any degree of heat alone without flame or glow covered." Richards, Insurance (4th Ed.) p. 326; *Solomon* v. *United States Fire Ins. Co.*, 53 R. I. 154, 158, 165 A. 214. This is in accord with the overwhelming weight of authority. *Austin* v. *Drewe*, 6 Taunt. 436, 128 Eng. Rep. 1104; *Sigourney Produce Co.* v. *Milwaukee Mechanics' Ins. Co.*, 211 Iowa 1203, 1205, 235 N. W. 284; *McGraw* v. *Home Ins. Co.*, 93 Kan. 482, 484, 144 P. 821; 1 Wood, Fire Insurance (2d Ed.) p. 236, § 103; 5 Couch, Insurance, p. 4395; 6 Cooley, Insurance (2d Ed.) p. 4933; 29 Am. Jur. 767, § 1016; 45 C. J. S. 862; notes, 20 A. L. R. 967, 68 A. L. R. 231. It follows that the damage to the exterior finish of the plaintiffs' furnace did not, under the circumstances, render this a hostile fire. The same holds true with regard to the fusing of the glass fiber insulation which lined the inside of the metal casing of the furnace.

There is no error.

In this opinion the other judges concurred.